**UNITED STATES of America,
Appellee,**

**v.**

**James A. LOVEJOY and Lloyd John
Ryer, Appellants.**

**No. 440, Docket 29979.**

United States Court of Appeals
Second Circuit.

Argued June 15, 1966.

Decided July 29, 1966.

David M. Dorsen, Asst. U. S. Atty. for Southern District of New York (Robert M. Morgenthau, U. S. Atty., Daniel R. Murdock and John E. Sprizzo, Asst. U. S. Attys., of counsel), for appellee.

Bernard P. Becker, New York City (Anthony F. Marra, New York City, on the brief), for appellants.

Before HAYS, ANDERSON, and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Appellants Lovejoy and Ryer were convicted of possessing goods stolen from interstate commerce in violation of 18 U.S.C. § 659. Appellants claim that an incriminating statement made by their co-defendant, Carter, was improperly admitted into evidence against Carter. On this basis they challenge the rejection of their request for deletion of references to them from the statement, and the sufficiency of the limiting instructions given to the jury. When it was discovered after the trial that Carter was only fifteen years old, his conviction was vacated and he was treated as a juvenile offender. Appellants claim that their convictions should also have been set aside. We find no merit in appellants' contentions and therefore affirm the judgment.

The facts are relatively simple.

Appellant Ryer was employed as a truck driver, and co-defendant Carter as

his helper, by Art-Ed Carriers of Manhattan. On April 23, 1965 Ryer and Carter were scheduled to make a delivery to the Wardex Terminal located at 33rd Street and 12th Avenue. Between 8 A.M. and noon, three cartons containing dresses and lamps, being shipped in interstate commerce, were stolen from the Terminal.

At about 12:30 P.M., agents of the Federal Bureau of Investigation, who had under surveillance a store at 105 East Broadway, saw both appellants and Carter pull up in an Art-Ed truck. The three men, carrying three cartons, left the truck and entered the store. The agents followed the men into the store and examined the cartons. Labels on the cartons indicated that they were to be shipped to Montgomery Ward stores in Missouri and Maryland. The men were placed under arrest.

Lovejoy, Ryer and Carter were immediately taken to headquarters of the Bureau at East 69th Street. At approximately 1:30 P.M., agents of the Bureau began to interrogate Carter. They advised him:

> "that he did not have to make any statement, that any statement he did make could be used against him in a court of law; * * * that he had a right to contact an attorney of his choice and that if he couldn't get one, one would be provided for him by the Court."

A written statement containing Carter's story was prepared within the hour. At trial, the statement was offered "solely against" defendant Carter; the following was read to the jury:

> " 'At around 11:20, when we were making a delivery at Norman Consolidated, at 38th Street, New York City, between Twelfth and Eleventh Avenue, Lovejoy got on our truck. Lovejoy is James Lovejoy who was brought to the FBI office' [1] * * *

[Objection]

He then says 'We proceeded to Montgomery Ward's receiving platform on 33rd Street and Twelfth Avenue, New York City. On entering the yard I noticed four cartons on the ground near the fire hydrant. These cartons were unattended. We then drove up to the platform to make our delivery. The checker told us that he would take our bills but we could not be unloaded until after lunch. It was then 11:50. I then suggested that we go around the block and see if the four cartons were still near the hydrant. We did this and parked and watched the cartons for about ten minutes. During this time Lloyd Ryer'—I will skip that portion.

'We knew they were not ours but decided to take them because they were just getting wet there in the street.'

He says, 'The cartons were put on the back of our Art-Ed truck. They were not opened.'

He says that they then drove to the area of Allen Street and East Broadway, New York City, that they parked on East Broadway in front of a store with a large sign that said 'Toys.'

He describes the manner in which the cartons were carried into the store and he states that to his knowledge they were to be brought to that store for sale to the man in the store."

With respect to this statement the court charged the jury:

> "Agent Beech identified a statement which he said defendant Carter signed after he was arrested. As I have previously told you several times, you must not consider this statement with respect either to defendant Lovejoy or to the defendant Ryer."

The jury returned a verdict against both appellants and Carter. Thereafter the pre-sentence investigation disclosed

---

1. When the statement was first admitted into evidence, the court gave the jury the following instructions:
 "The testimony is that this is a statement of the defendant Carter. It is being offered only against him, it is admissible only against him. You are not to consider the contents of this statement in considering the guilt or innocence of the other two defendants."

that Carter, who was thought by everyone to be nineteen years of age, was fifteen at the time of arrest and sixteen at the time of conviction. Judge McLean, with the agreement of the government, set aside Carter's conviction and permitted him to be treated as a juvenile offender. Carter was found guilty of juvenile delinquency and placed on probation for four years.

 In considering whether the trial court was within its discretion in refusing to grant appellants' request for deletion, we look to the tests laid down in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); United States v. Casalinuovo, 350 F.2d 207 (2d Cir. 1965); and United States v. Castellana, 349 F.2d 264, 274–75 (2d Cir. 1965). Under these decisions, it is clear on the facts of this case that the court below did not abuse its discretion unless Carter's statement was inadmissible against Carter himself, assuming *arguendo* that appellants might properly raise that issue.

Appellants fail to establish that the statement was inadmissible against Carter.

 Relying on Rule 5(a) of the Federal Rules of Criminal Procedure and on provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5037, appellants contend that Carter's statement was obtained during a period of illegal detention.

After appellants and Carter were arrested, the agents undertook to search the store where the arrests took place and to inventory the merchandise found on the premises. They then proceeded to the headquarters of the Federal Bureau of Investigation which is several miles from the place of arrest. There they photographed and fingerprinted appellants. Under these circumstances, the delay of no more than two hours between the arrest of Carter and his signing the statement was not an "unnecessary delay" in arraignment. See United States v. Vita, 294 F.2d 524 (2d Cir. 1961), cert. denied,

369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962); United States v. Ladson, 294 F.2d 535 (2d Cir. 1961), cert. denied, 369 U.S. 824, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962). The relatively short subsequent delay could not have affected the statement or prejudiced appellants.

On these facts, the statement cannot be considered involuntary under Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962) or any of the other cases cited by appellants.

 The Federal Juvenile Delinquency Act is concerned with the proper treatment of juveniles taken into custody. Section 5035, 18 U.S.C. § 5035, reads:

> "If the juvenile is not forthwith taken before a committing magistrate, he may be detained in such juvenile home or other suitable place of detention as the Attorney General may designate for such purposes, but shall not be detained in a jail or similar place of detention, unless, in the opinion of the arresting officer, such detention is necessary to secure the custody of the juvenile, or to insure his safety or that of others.

> In no case shall such detention be for a longer period than is necessary to produce the juvenile before a committing magistrate."

In view of the arresting officers' ignorance as to Carter's age, the detention of Carter did not constitute such a violation of this section as to make his statement inadmissible.

 Even taking Carter's age into consideration, we are convinced that the interrogation did not, under the then controlling standards, deprive him of any constitutional rights and that his statement was properly held to be admissible against him. See United States v. Robinson, 354 F.2d 109 (2d Cir. 1965), cert. denied, 384 U.S. 1024, 86 S.Ct. 1965, 16 L.Ed.2d 1028 (1966); United States v. Drummond, 354 F.2d 132 (2d Cir. 1965), cert. denied, 384 U.S. 1013, 86 S.Ct. 1968, 16 L.Ed.2d 1031 (1966).

Section 5032 of the Federal Juvenile Delinquency Act, 18 U.S.C. § 5032, provides:

"A juvenile * * * shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise."

Since Carter had no absolute right to be tried as a juvenile, appellants' claim that they had an absolute right not to be tried with him must surely be rejected. The initial joinder of appellants and Carter was proper under Rule 8(b) of the Federal Rules of Criminal Procedure. The discovery of Carter's age, after trial, and the vacating of his conviction is of no significance so far as appellants are concerned. See Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

Affirmed.