[No. 39682. Department Two. May 2, 1968.]

*In the Matter of the Application for a Writ of Habeas Corpus of* MARTIN L. SHEPPARD, *Appellant,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*\*

*Hugh E. Fountain, Jr.,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Joseph D. Mladinov,* and *Eugene G. Olson,* for respondent.

WALTERSKIRCHEN, J.†—May 13, 1958, Martin L. Sheppard (hereinafter called petitioner) was charged in the

\*Reported in 440 P.2d 422.

†Judge Walterskirchen is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Pierce County Superior Court with robbery. Competent counsel was appointed to represent him and he entered a plea of not guilty. Prior to his trial, petitioner's counsel contacted petitioner's aunt, who was acting as his guardian since his own parents did not reside in the state of Washington. The trial resulted in a verdict of guilty, and thereafter, on July 14, 1958, judgment of sentence and conviction was entered.

January 18, 1967, petitioner, then an inmate at the Washington State Penitentiary, petitioned the Superior Court for Walla Walla County for a writ of habeas corpus, alleging *inter alia*, that at the time of his arrest, trial and conviction, he was 17 years of age, but was not treated as a juvenile and was not afforded a hearing as required by RCW 13.04, by *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 Sup. Ct. 1045 (1966), and by *In re Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940, 422 P.2d 783 (1967). The respondent's return and answer to the writ admitted that petitioner, at the time of his trial, was 17 years of age, that he was not treated as a juvenile, and that he was not given a transfer hearing. The Walla Walla Superior Court remanded the cause to Pierce County Superior Court for the sake of convenience in giving petitioner a hearing as provided for in *Dillenburg, supra.*

The Pierce County Superior Court appointed counsel to represent petitioner at the hearing which was duly held on April 6, 1967. Prior to the hearing petitioner and his counsel were given access to 13 exhibits which, subsequently at the hearing, were identified and admitted into evidence.

The trial court, at the de novo Dillenburg hearing, found and concluded that the petitioner was 17 years of age at the time he was tried and convicted as an adult, that there had been no juvenile court proceeding concerning the petitioner, but that petitioner had waived the right to be heard in the juvenile court with respect to transfer to adult status for criminal prosecution. No contention is made that the superior court in the criminal proceeding against the petitioner was apprised of the fact that the petitioner was less

than 18 years of age, nor is any claim made that it (the superior court) was apprised that it might not have had jurisdiction as to the robbery charge, or that petitioner was or should have been under the jurisdiction of the juvenile court. (The term jurisdiction is used here in the limited sense that it is used in *Dillenburg*.) No appeal was taken from the robbery, judgment and sentence, nor is the propriety of that trial challenged here in any other respect than the failure to accord petitioner a transfer hearing.

At the outset of the de novo Dillenburg hearing, petitioner challenged the jurisdiction of the Pierce County Superior Court to hold such a hearing in view of the fact that no juvenile court hearing of any nature had been conducted in 1958. In *Dillenburg* we were concerned with the transfer of a juvenile to adult status by an order of a probation officer without a hearing. We held that, whenever a transfer from juvenile control is faulty, proper relief can usually be afforded by a de novo hearing as to the propriety of the challenged transfer, and we directed that the de novo hearing should be an inquiry into

> whether the facts before the juvenile "session" of the superior court in the first instance warranted and justified the transfer for criminal prosecution. *In re Dillenburg v. Maxwell*, 70 Wn.2d 331, 355, 413 P.2d 940, 422 P.2d 783 (1967).

Although the instant case involves a situation where there was *no* transfer as opposed to *faulty* transfer, we perceive no difference between the null and void acts of the probation officer in *Dillenburg* and the absence of a hearing in the instant case. Moreover, both *Kent, supra,* and *Dillenburg, supra,* provide for a hearing de novo; *i.e.* a hearing as if originally commenced in the court hearing the case, *State v. Buckman,* 51 Wn.2d 827, 322 P.2d 881 (1958), or, "a new trial 'as if no trial had ever been had, . . . .'" *Patton v. State*, 39 Ala. App. 308, 311, 98 So. 2d 621 (1957). *See also American Food Growers Inc. v. T. Runzo & Co.,* 95 F. Supp. 842 (W.D. Pa. 1951).

■ We hold, therefore, that the *Dillenburg* rationale and procedures were properly applied to the instant case

and that the de novo hearing in any case involving a juvenile who challenges the propriety of his being tried in the superior court on these grounds shall be an inquiry into all the circumstances relating to his having been tried as an adult. Of course, the underlying purpose of the de novo hearing remains. The court must determine whether, under all the circumstances, the petitioner should have been dealt with as a juvenile, *Kent v. United States, supra.*

■ Petitioner's next assignments of error raise the question of whether hearsay evidence, in the form of an FBI arrest record, and local police and sheriff reports and arrest records, should be admitted into evidence or considered by the court in a de novo Dillenburg hearing. Inasmuch as the hearing itself, in the typical case, is an attempt to recreate what should have occurred in the first instance, we must ascertain what evidentiary rules are applicable in a declination or transfer hearing in juvenile court. The pertinent statute is RCW 13.04.120, which provides:

> If, upon investigation, it shall appear that a child has been arrested upon the charge of having committed a crime, the court, in its *discretion,* may order such child to be turned over to the proper officers for trial under the provisions of the criminal code. (Italics ours.)

Furthermore, RCW 13.04.040 directs the probation officer to

> [I]nquire into the antecedents, character, family history, environments and cause of dependency or delinquency of every alleged dependent or delinquent child brought before the juvenile court and shall *make his report in writing to the judge thereof.* (Italics ours.)

In *In re Estes v. Hopp, ante* p. 263, 438 P.2d 205 (1968), this court recently recognized that, although the altruistic concept embodied in the spirt of the 19th century juvenile court acts have run headlong into the 1968 construction of "due process," still *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 Sup. Ct. 1428 (1967), which typifies current due process concepts, is not to be considered as a mandate to abandon the beneficial aspects of the juvenile court system so long as the essentials of due process and fair play are observed.

We consider one of these beneficial aspects of the juvenile court system to be an informal hearing, in the proper case, as to whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all of the circumstances, should be transferred to be tried as an adult.

In *Kent, supra,* the court, speaking of the type of hearing which should be afforded the juvenile, said at 561-62:

> [W]e conclude that an opportunity for a hearing which may be informal, must be given the child . . . .
>
> . . . .
>
> *We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing;* . . . . (Italics ours.)

The transfer hearing is neither a criminal trial nor a juvenile proceeding which may lead to commitment, nor even to a finding of delinquency. The juvenile court, although delimited in certain respects by the requirements of "due process and fairness," is authorized by statute to exercise its discretion. Moreover, in administrative hearings, referred to in *Kent, supra,* the technical rules for the exclusion of evidence do not apply, *Opp Cotton Mills Inc. v. Administrator of Wage & Hour Div. of the Dep't of Labor,* 312 U.S. 126, 85 L. Ed. 2d 624, 61 Sup. Ct. 524 (1941), and hearsay is generally admissible, *Rocker v. Celebrezze,* 358 F.2d 119 (2d Cir. 1966).

Analogous to the original or the de novo hearing is the situation of a judge determining what sentence to impose. *Williams v. New York,* 337 U.S. 241, 93 L. Ed. 1337, 69 Sup. Ct. 1079 (1949), approved the use of hearsay probation reports for the purpose of aiding the discretion of the sentencing judge. *See also People v. Peace,* 18 N.Y.2d 230, 219 N.E.2d 419 (1966).

It is clear from the legislative pronouncements, as well as from the nature of the proceeding itself, that probation officers' reports and law enforcement officers' reports and arrest records are among those items which, of necessity,

the trial court must consider. *See Kent, supra,* at 559-563. Inasmuch as it would not have been error for such reports to have been considered had a proper hearing been held in the first instance, it was not error for the trial court at the de novo hearing to consider them.

 Petitioner's remaining assignments of error challenge the trial court's conclusions of law:

> That the Petitioner . . . waived any rights he had to be heard in the Juvenile Court by continuously misrepresenting his age to be more than 18 years old.

Having already determined that the *Dillenburg* rationale and procedures embrace an inquiry into all the circumstances relating to the fact of this petitioner having been tried as an adult, we need not belabor the point. We conclude that, under the unique facts of this case, it was proper for the trial court to proceed on the basis of waiver. And, in sustaining the trial court's determination that a waiver did in fact exist, we note that the petitioner had been arrested several times prior to the arrest in the instant case, and that on all these occasions he gave his birthdate as December 10, 1938 (making his claimed age at the time of his arrest to be 18 years and 5 months), and that appellant signed two documents under oath and in each he swore that he was 18 years of age; that on August 21, 1957, petitioner was charged in the Superior Court for Pierce County with grand larceny, on that date he had competent counsel appointed to represent him and he entered a plea of guilty and was placed on probation as an adult; that at all pertinent times petitioner had been represented by competent counsel; and, that at no time prior to his petition for the writ of habeas corpus in 1967 was the propriety of the trial for robbery in the superior court challenged on the basis that petitioner was not 18 years of age. As a result of his own willful deceptive acts, and because his own counsel (who had been in contact with his guardian) did not raise the question, petitioner must be held to have waived his rights to have been treated as a juvenile for the purpose of a transfer hearing.

For the proposition that, by his conduct, a juvenile may waive the right to a transfer hearing, *see Penn v. Peyton,* 270 F. Supp. 981, 984 (W.D. Va. 1967),[1] wherein the court spoke to substantially the same question raised in the instant case:

This court feels that petitioner waived his right to the statutory investigation by misrepresenting to the trial court that he was 18 years of age. To hold otherwise would place an unconscionable burden on the state courts. To uphold petitioner's contention would require the state courts to conduct an independent investigation to determine the true age of every defendant. Any minor defendant would be able to mislead a court and take his chances on being tried as an adult, and then if unsatisfied with the result, the minor defendant could assert his minority and have the conviction set aside.

We also note that, had the trial judge in the de novo hearing in this case elected to review the exhibits to determine whether the evidence was such that a transfer would have been merited, ample evidence was available to have justified such a determination.

The judgment is affirmed.

FINLEY, C. J., HUNTER, HAMILTON, and HALE, JJ., concur.

---

July 8, 1968. Petition for rehearing denied.

---

[1]*See also Ashby v. Haugh,* 152 N.W.2d. 228 (Iowa 1967); *People v. Navarro,* 212 Cal. App. 2d 299, 27 Cal. Rptr. 716 (1963); *Ex parte Nolden,* 172 Tex. Cr. 553, 360 S.W.2d 151 (1962); *Mellott v. Alvis,* 109 Ohio App. 486, 162 N.E.2d 623 (1959); *State ex rel. Hinkle v. Skeen,* 138 W. Va. 116, 75 S.E.2d 223 (1953); *cert. denied,* 345 U.S. 967.