[No. 43707.    En Banc.    August 14, 1975.]

*In the Matter of the Welfare of* WILLIAM HENRY HARBERT.

WILLIAM HENRY HARBERT, *Petitioner*, v. THE STATE OF WASHINGTON, *Respondent.*

720

J. *Adam Moore* (of *Dobbs, Van Diest & Moore*) and *David A. Thorner* (of *Weeks, Buren & Thorner*), for petitioner (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Kenneth W. Raber, Deputy,* for respondent.

*Christopher T. Bayley, King County Prosecuting Attorney,* and *Jonathan B. Noll, Deputy; Mark Leemon* of Seattle-King County Public Defender, amici curiae.

WRIGHT, J.—This case challenges the regularity of proceedings conducted under RCW 13.04.120 relating to the declination of jurisdiction by the juvenile court. Appellant challenges the constitutionality of RCW 13.04.120 on the basis that no standards are enunciated in the statute to serve as guidelines to the court. Appellant also challenges the admission of certain evidence at the hearing. We hold that RCW 13.04.120 is constitutional. We also hold that the testimony, reports and exhibits offered into evidence are admissible in this type of hearing.

On the night of February 14, 1975, Yakima County sheriff's deputies responded to a call from appellant's mother reporting a shooting at appellant's address. When the deputies arrived, appellant's father was found lying in a bathroom with a fatal head wound. The sheriff's office sent out a bulletin on appellant and the following day he was ar-

rested by Douglas County deputy sheriffs in East Wenatchee. At the time of apprehension, appellant's father's wallet was found in appellant's possession. Appellant was conveyed to Waterville where he was questioned about the shooting. A short time later, a deputy sheriff from Yakima County made contact with the appellant who was given *Miranda* warnings. Appellant then said he wished to make a statement. In the statement taken from the appellant it was learned that the appellant and his father had an argument. The argument occurred after the father was notified that the appellant had dropped his third period class in school. The father threatened to beat the appellant and have him sent to Cascadia. Appellant admitted he had decided to shoot his father before going downstairs. Approximately 5 minutes after going downstairs, appellant went back upstairs and shot his father.

Two days after the shooting, Yakima County officers, with the consent of appellant's mother, searched appellant's bedroom and seized a wall plaque containing the inscription: "I keep thinking about killing my parents but I don't know if I can stop myself if they get me that mad."

Appellant was charged by delinquency petition in Yakima County Juvenile Court. At a hearing to determine whether the Juvenile Court would waive jurisdiction, both the confession and the plaque, over appellant's objection, were admitted into evidence. The Juvenile Court also considered the probation officer's report though the probation officer did not personally testify in connection with the report. The State further offered into evidence (over appellant's objection) a coroner's report and hearsay statements regarding appellant's conversation with Waterville police soon after arrest.

The defense called a number of expert witnesses. A psychiatrist testified that appellant was sane and that appellant was not a danger to society and would probably only initiate violence toward family members. The Regional Administrator of Juvenile Probation and Parole testified that the juvenile facilities were adequate to handle appellant.

The Reverend Alan L. Ward, a Methodist minister with experience in the adult correctional system, testified that he felt appellant belonged in a juvenile system if custody could be extended to his 21st birthday. He stated he would not want to see appellant released at age 18. Appellant also called his mother, who testified she felt appellant was not a danger to the community. However, when asked about release at age 18, she answered: "It would not be long enough."

The Juvenile Court, after hearing testimony and considering all of the evidence, declined jurisdiction. The court made the specific finding that juvenile facilities were inadequate to rehabilitate the 17½-year-old youth unless juvenile jurisdiction could be retained until his 21st birthday. Based on the decision of *In re Carson*, 84 Wn.2d 969, 530 P.2d 331 (1975) the court correctly believed that its jurisdiction could not, even by consent, be extended beyond appellant's 18th birthday.[1]

Appellant appealed the order declining jurisdiction. The Court of Appeals issued an order staying the criminal trial. This court granted review by writ of certiorari.

We will consider the constitutional attack on RCW 13.04.120 first. The gist of appellant's attack is that he is denied due process in two ways. First, that the standards provided in the statute are so vague as to allow arbitrary, capricious or discriminatory decision making. Second, that the standards pertaining to declining jurisdiction are so unclear that the juvenile cannot effectively prepare for the waiver hearing.

■ There is a presumption in favor of the constitutionality of RCW 13.04.120 and appellant must clearly demonstrate its unconstitutionality. *Yelle v. Kramer*, 83 Wn.2d 464, 520 P.2d 927 (1974); *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 520 P.2d 162 (1974); *Young Americans for Freedom, Inc. v. Gorton*, 83 Wn.2d 728, 522 P.2d 189 (1974); *Swanson v. White*, 83

---

[1]The legislature, by Laws of 1975, 1st Ex. Sess., ch. 170, extended juvenile court jurisdiction to age 21 in certain cases.

Wn.2d 175, 517 P.2d 959 (1973); *State ex rel. Morgan v. Kinnear*, 80 Wn.2d 400, 494 P.2d 1362 (1972); *Seattle v. Jones*, 79 Wn.2d 626, 488 P.2d 750 (1971).

█ This court has already given a narrowing construction to RCW 13.04.120 and particularly to that portion of the statute allowing the court "in its discretion" to decline jurisdiction. The eight criteria mentioned in *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), have been adopted in this jurisdiction in *State v. Williams*, 75 Wn.2d 604, 453 P.2d 418 (1969). *Accord, In re Burtts*, 12 Wn. App. 564, 530 P.2d 709 (1975). Superimposed on the eight *Kent* criteria are the limitations imposed on all courts of first instance, which arise from statutory, common law and court rule created principles of appellate review. In *In re Burtts, supra*, the Court of Appeals sustained a "vagueness" attack upon RCW 13.04.120 by stating, in part, at page 570:

> To assure judicial responsibility, the discretion exercised by a juvenile court is reversible for manifest abuse of discretion, *i.e.*, when "the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972). Moreover, when a juvenile court exercises judicial power, including the exercise of discretion, like other courts it is subject to law-oriented reasons, precedents, legal concepts and principles, as well as traditional legal logic characteristic of the American legal system.

Further limitation is found in the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and from article 1, section 3 of the Washington Constitution. In *Kent v. United States, supra*, the United States Supreme Court characterized waiver proceedings as "critically important" and stated at page 554:

> there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons.

Moreover, both *Kent* and *Dillenburg v. Maxwell*, 70 Wn.2d

331, 413 P.2d 940, 422 P.2d 783 (1966), recognize the necessity that a waiver order must be accompanied by a statement of the reasons for the waiver order of sufficient specificity to permit meaningful review. The judge's findings of fact exactly paralleled the eight criteria mentioned in *Kent*. The combined effect of these three sources of limitation provide adequate standards. RCW 13.04.120 is not amenable to attack for vagueness or overbreadth.

The second aspect of appellant's attack on RCW 13.04.120 must also fail.

Appellant's counsel knew beforehand that the seriousness of the crime and the shortness of time available for juvenile rehabilitation would be the two most serious obstacles to resisting waiver. He perceived the problem, was well prepared for it and adequately fulfilled his role as advocate. It was stated in *Haziel v. United States*, 404 F.2d 1275, 1279 (D.C. Cir. 1968):

> The child's advocate should search for a plan, or perhaps a range of plans, which may persuade the court that the welfare of the child and the safety of the community can be served without waiver.

In the instant case, counsel offered a plan under the juvenile system. Counsel even procured written consent from his client, attempting to extend jurisdiction until age 21. Such consent is of no value. Because of his minority, appellant could repudiate it upon reaching majority. Further, jurisdiction cannot be conferred by consent or agreement. *Puget Sound Agricultural Co. v. Pierce County*, 1 Wash. Terr. 75 (1859). *Miles v. Chinto Mining Co.*, 21 Wn.2d 902, 153 P.2d 856 (1944); *Washington Local 104, Int'l Bhd. of Boilermakers v. International Bhd. of Boilermakers*, 28 Wn.2d 536, 183 P.2d 504 (1947); *Adams v. Walla Walla*, 196 Wash. 268, 82 P.2d 584 (1938); *Wesley v. Schneckloth*, 55 Wn.2d 90, 346 P.2d 658 (1959).

Counsel offered expert testimony by a number of witnesses to the effect that juvenile facilities were adequate to rehabilitate the appellant. However, without exception, appellant's own witnesses stated that a rehabilitation program

lasting only 6 months would be inadequate. Appellant and his counsel were in no way prevented from fully presenting their views. We hold that the statute (RCW 13.04.120) is constitutional.

■ The decision to waive jurisdiction was supported by substantial evidence and cannot now be overturned for arbitrariness. *State v. Williams, supra; Williams v. Rhay*, 73 Wn.2d 770, 440 P.2d 427 (1968); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959); *Sylvester v. Imhoff*, 81 Wn.2d 637, 503 P.2d 734 (1972).

*Caveat*: Nothing said herein relative to evidence problems is to be in any way construed as approving any relaxation of the rules of evidence in any other kind of proceeding.

■ In considering the evidentiary challenges made by the appellant, one must keep in mind two very important distinctions that exist between a declination hearing, and an adult criminal prosecution. First, a declination hearing is not prosecutorial in nature. In *State v. Piche*, 74 Wn.2d 9, 442 P.2d 632 (1968), this court stated at page 14:

> In determining whether the essentials of due process and fair treatment were provided in the instant case, it is important to keep in mind the exact nature of a juvenile court transfer hearing. Such a hearing does not result in a determination of delinquency as may a hearing held pursuant to RCW 13.04.070; does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, the sole purpose of the transfer hearing, as we have recently said, is to determine "whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult." *In re Sheppard v. Rhay, supra* [73 Wn.2d 734, 440 P.2d 422], at 738.

*Accord, Sheppard v. Rhay*, 73 Wn.2d 734, 440 P.2d 422 (1968); *Clemons v. State*, 317 N.E.2d 859 (Ind. Ct. App.

1974); *State v. Carmichael*, 35 Ohio St. 2d 1, 298 N.E.2d 568 (1973), *cert. denied*, 414 U.S. 1161, 39 L. Ed. 2d 113, 94 S. Ct. 922 (1974); *State ex rel. Juvenile Dep't v. Johnson*, 11 Ore. App. 313, 501 P.2d 1011 (1972).

The second consideration is that, unlike a criminal proceeding where the judge and jury focus attention on an act, the judge in a juvenile proceeding must focus attention on the actor. In *Miller v. Quatsoe*, 332 F. Supp. 1269 (E.D. Wis. 1971), the court stated at page 1275:

> Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against the safety, needs, and demands of society. Further, besides judging the "whole man" as opposed to the act with wide as opposed to limited discretion, the juvenile judge may perform his task in a comparatively informal proceeding.

(Citation omitted.) *Accord, Kent v. United States, supra* at 554. With these considerations in mind, we now consider each item of evidence that appellant challenges.

As to the coroner's report and the probation officer's report neither are excluded from this type of hearing under the hearsay rule. *Sheppard v. Rhay, supra; State v. Piche, supra; Clemons v. State, supra; State v. Carmichael, supra; In re Murphy*, 15 Md. App. 434, 291 A.2d 867 (1972). The Sixth Amendment right to confrontation does not apply in this kind of hearing to exclude such evidence as psychological reports, probation reports, social agency reports etc. for the same reasons. *Dutton v. Evans*, 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *California v. Green*, 399 U.S. 149, 26 L. Ed .2d 489, 90 S. Ct. 1930 (1970); *State v. Carmichael, supra; Clemons v. State, supra* at 865 n.10; *In re Murphy, supra*. However, counsel in all juvenile proceedings, has the right to inspect any written material

submitted to the judge. As cautioned in *Kent v. United States, supra* at 563:

> While the Juvenile Court judge may, of course, receive *ex parte* analyses and recommendations from his staff, he may not, for purposes of a decision on waiver, receive and rely upon secret information, whether emanating from his staff or otherwise.

The right to inspect social reports appears in JuCR 5.2(b).[2] The appellant, pursuant to this rule, was furnished copies of the report prior to the hearing and had an opportunity to examine the report prior to the hearing. If there was any error or uncertainty in the report, there was ample opportunity to obtain controverting evidence or witnesses.[3] Viewing all of the protective devices accompanying the submission of these written reports, we conclude that the standard of due process used in juvenile proceedings, called "fundamental fairness," has been met. *McKeiver v. Pennsylvania*, 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971); *Patterson v. Hopkins*, 350 F. Supp. 676 (N.D. Miss. 1972).

■ Appellant's Fifth Amendment challenge to the admission into evidence of his statement to detective Ochs is also without merit. At the time the appellant signed the written statement, he had been given *Miranda* warnings. Even assuming (without deciding) that appellant's prior statement to the Waterville City Police tainted the latter "Mirandized" confession to detective Ochs, neither of the

---

[2] JuCR 5.2(b) provides:

"An attorney for any interested party shall have a right to inspect the social file and the social study a reasonable time prior to the disposition hearing, . . ."

[3] During oral argument, counsel for appellant suggested that if he had subpoenaed the probation officer who prepared the report, the juvenile court judge would have somehow vetoed any chance of cross-examination, as a matter of policy. Nowhere in the record is this claim substantiated. However, to clarify matters, we now announce the rule that whenever counsel in proceedings of this type alleges any irregularities in the social report or mentions a need for clarification on any matter mentioned in such report, as a matter of right, counsel may subpoena and cross-examine the party preparing the report, if desired.

statements in this proceeding would be inadmissible. The guilt or innocence of appellant is not at issue in this waiver proceeding, nor can this proceeding itself lead to appellant's loss of liberty. Any statements by the appellant would be relevant for determining the best interests of the child and of society. In *State ex rel. Juvenile Dep't v. Johnson, supra,* the court stated at page 320:

> The question of admissibility of evidence in a remand hearing is essentially one of relevance to the issue to be decided. We think a statement made by the boy shortly after he was taken into custody is relevant, not to establish whether or not he committed the acts alleged, though certainly it may have a tendency to do so, but to aid those qualified as experts to express an opinion concerning the ultimate question before the court—the determination of what is in the best interest of the child and of the public.

Further, *Kent* does not expressly extend the right against self-incrimination to waiver hearings but simply leaves the issue open.[4]

In view of the nature of this proceeding, we hold that both the statements made by appellant, regarding the circumstances of the shooting, are relevant and admissible in this kind of proceeding and do not violate any Fifth Amendment prohibition.

■  Our own court rules do not require excluding appellant's statements to the police and the detective. Appel-

---

[4]"While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties applicable to adults. . . . There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.

"This concern, however, does not induce us in this case to accept the invitation to rule that constitutional guaranties which would be applicable to adults charged with the serious offenses for which Kent was tried must be applied in juvenile court proceedings concerned with allegations of law violation." (Footnotes omitted.) *Kent v. United States, supra* at 555–56.

lant asserts that the lack of parental waiver vitiates any consent the appellant might have given for the taking of his statement by detective Ochs. JuCR 7.3 provides:

> Any right which a child has under these rules may be waived by an express waiver intelligently made by the child and his parent or custodian after they have been fully informed of the right being waived.

JuCR 1.1 provides:

> These rules shall govern the procedure of all matters within the jurisdiction of the Juvenile Court, including actions taken by probation officers, . . .

In *State v. Prater*, 77 Wn.2d 526, 534, 463 P.2d 640 (1970), we held that the rule of parental consent does not pertain to inquiries of peace officers proximate to the making of arrests.

Finally, as to the wall plaque containing the words, "I keep thinking about killing my parents but I don't know if I can stop myself if they get me that mad," appellant concedes in his brief that the plaque was lawfully seized and limits his challenge to one of relevancy. *State v. Vidor*, 75 Wn.2d 607, 452 P.2d 961 (1969). Specifically, appellant contends that the inflammatory effect of the plaque outweighs its probative value. *State v. Smith*, 5 Wn. App. 237, 487 P.2d 227 (1971). The wall plaque was certainly relevant to the issue of premeditation. In Washington, a trial judge is presumed to know the rules of evidence and is presumed to have considered only the evidence properly before the court, and for proper purposes. *State v. Bell*, 59 Wn.2d 338, 368 P.2d 177 (1962), *cert. denied*, 371 U.S. 818, 9 L. Ed. 2d 59, 83 S. Ct. 34 (1962); *State v. Jefferson*, 74 Wn.2d 787, 446 P.2d 971 (1968). For the purpose of the hearing on declination, the plaque was properly admitted.

We, therefore, affirm the order waiving juvenile court jurisdiction over the appellant.

STAFFORD, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, and BRACHTENBACH, JJ., and COCHRAN, J. Pro Tem., concur.