STATE of Missouri, Respondent,

v.

Dirk Allen WADE, Appellant.

No. 58159.

Supreme Court of Missouri,
En Banc.

Jan. 12, 1976.

As Modified On Denial of Rehearing
Feb. 9, 1976.

Stanley E. Goldstein, Dan Hayes, Hayes & Heisler, Clayton, for appellant.

John C. Danforth, Atty. Gen., Paul Otto, Asst. Atty. Gen., for respondent.

DONNELLY, Judge.

Appellant, Dirk Allen Wade, was convicted of first degree murder by a jury in the City of St. Louis. He was sentenced to life imprisonment on October 27, 1972. He filed his notice of appeal on November 3, 1972. We retain jurisdiction on the basis of our order entered April 9, 1973, following our decision in *Parks v. State*, 492 S.W.2d 746 (Mo. banc 1973). We reverse and remand.

Ernest Gutzmann was shot between 1:00 and 1:30 a. m. on the morning of October 24, 1970, near the corner of Union Boulevard and Harney Avenue in St. Louis, Missouri. He died from the gunshot wound on October 30, 1970.

Appellant was indicted for the murder of Ernest Gutzmann on April 27, 1971. He filed a motion to suppress statements on May 17, 1971. Evidence adduced at the pretrial hearing on this motion to suppress showed that appellant was arrested at 4:10 p. m., December 29, 1970, in connection with a robbery. Appellant was transported to the Sixth District police station. The arresting officers testified that on the way to the station appellant was questioned about his age; that he responded that his birth date was January 24, 1953; and that in response to a statement by one of the officers, appellant agreed that he was seventeen. He was, at the time of the arrest, sixteen years of age.

While being transported to the police station, appellant was informed of his constitutional rights and indicated that he understood them.

Upon arriving at the Sixth District station at 4:25 p. m., appellant was taken to an interrogation room. Two other officers (Qualls and Murphy) joined the two arresting officers (Hoyer and Happe) in the interrogation room. After approximately half an hour of interrogation, the officers asked appellant if he had anything to say about other crimes. According to the officers'

testimony, appellant stated that he had shot a man at the corner of Union and Harney. At this point, the homicide division was called in.

Officers Tumminello, Hummert and Dowd from the homicide division arrived at the Sixth District station at 5:15 p. m. and questioned appellant for approximately fifteen minutes. These officers had been informed by the Sixth District officers that appellant was seventeen years old and did not inquire further about his age. Before these officers questioned appellant, they again informed him of his constitutional rights and informed him that he was a suspect in the shooting death of Ernest Gutzmann. Appellant then made an oral statement to the officers implicating himself in the Gutzmann crime. Following this statement, the homicide detectives took appellant to Central Headquarters. A records check there revealed that appellant was sixteen years of age. Officer Tumminello immediately called appellant's mother and had appellant conveyed to the Juvenile Center.

The State's evidence consisted primarily of Officer Tumminello's testimony regarding the confession appellant made to him. This confession was never reduced to written form. Appellant contends that the confession is inadmissible because of noncompliance with § 211.061(1), RSMo 1969. This section reads as follows:

> "1. When a child is taken into custody with or without warrant for an offense, the child together with any information concerning him and the personal property found in his possession, shall be taken immediately and directly before the juvenile court or delivered to the juvenile officer or person acting for him."

A "child" is a person "under seventeen years of age." § 211.021(2), RSMo 1969. The jurisdiction of the juvenile court attaches from the moment the child is taken into custody. § 211.131(3), RSMo 1969.

Appellant contends that these sections render inadmissible any statement given by

him between arrest and delivery to the juvenile authorities.

The State contends that appellant wilfully misrepresented his age to the officers and thereby "waived his right" to be turned over to the juvenile authorities before questioning.

Appellant relies on *State v. Arbeiter*, 408 S.W.2d 26 (Mo.1966). In *Arbeiter* a fifteen-year-old boy was taken into custody and questioned by police before being taken to the juvenile authorities pursuant to § 211.061(1). The officers in *Arbeiter* knew the defendant was fifteen but felt it was not necessary to comply with § 211.061(1). This Court reversed the conviction on the grounds that the statements given before the defendant was taken to the Juvenile Center were inadmissible.

The State recognizes the impact on this case of the *Arbeiter* holding but seeks to distinguish it on the ground that appellant misrepresented his age and thereby "waived his right" to insist on the provisions of § 211.061(1). In support of this contention, the State cites several cases which hold that a juvenile's misrepresentation of his age constitutes a waiver of his "right" to be treated as a juvenile.

In *United States v. Lovejoy*, 364 F.2d 586 (2nd Cir. 1966), there were three codefendants. One was a juvenile (Carter) who misrepresented his age through trial. After a verdict was returned, it was vacated as to Carter, and the two adult defendants sought to set aside their convictions on the grounds that Carter's statement was inadmissible. A federal statute (18 U.S.C. § 5035) required that a juvenile be taken to the juvenile authorities unless jail detention was necessary. The court held that in "view of the arresting officer's ignorance as to Carter's age, the detention of Carter did not constitute such a violation of this section as to make his statement inadmissible."

In *Penn v. Peyton*, 270 F.Supp. 981 (W.D. Va.1967), petitioner was tried and convicted as an adult. Both petitioner and his father misrepresented petitioner's age through trial. After conviction, petitioner sought habeas corpus because no investigation was made to determine if he should be tried as an adult. The court held that he had waived his statutory right to an investigation by his wilful misrepresentation. The court reasoned that to permit a juvenile to insist on being treated as a juvenile after wilfully being tried as an adult would allow juveniles to take their chances in adult courts and, if convicted, to try again in the juvenile system. This was seen as an abuse of the Juvenile Code. Another case following this theory is *Sheppard v. Rhay*, 73 Wash.2d 734, 440 P.2d 422 (Wash.1968). *Rhay* was also a case where the juvenile sought relief after trial as an adult.

There are several other cases where courts have refused to afford a juvenile the protections of the Juvenile Code when the juvenile misrepresented his age through a plea of guilty or trial and then sought to set aside the conviction. See *State v. Superior Court of Pima County*, 7 Ariz.App. 170, 436 P.2d 948 (1968); *People v. Henderson*, 2 Ill.App.3d 285, 276 N.E.2d 377 (1971); *People v. Walker*, 19 Ill.App.3d 798, 313 N.E.2d 217 (1974).

The rationale of all these cases is that a juvenile should not be allowed to use the Juvenile Code as both a shield and a sword; that a juvenile should not be allowed to wilfully misrepresent his age, be tried as an adult, and then, if convicted, try again at the juvenile level.

We need not decide in this case the position we would take if presented with a case of continuing misrepresentation which constitutes an abuse of judicial process. In any event, we do not believe the cases cited by the State are directly in point on the question confronting us in this case.

■ We believe the Juvenile Code recognizes the *incapacities* of persons under seventeen years of age, and intends that a child shall be provided with the assistance of a juvenile officer or other juvenile court personnel before he is subjected to the rig-

ors of police interrogation. We doubt the capacity of an offender under seventeen years of age to legally effect a waiver of any kind *in the absence of such a person.*

In *State v. Wright*, 515 S.W.2d 421, 430, 431 (Mo. banc 1974), this Court stated the rule "that if, after he has been granted his federal constitutional Fifth and Sixth Amendment rights, a juvenile subject to jurisdiction of the juvenile court makes a voluntary statement to someone other than a juvenile officer or other juvenile court personnel, and if it is made clear to the juvenile that criminal responsibility can result from any statement he makes and that the questioning authorities are operating as his adversaries rather than his friends, such statements are admissible in evidence against the juvenile in a criminal trial."

The Court then said:

"The rule we adopt does not make juvenile proceedings a mere adjunct to the criminal process nor nullify the juvenile code or its effectiveness. Sec. 211.061 requires that immediately after being taken into custody, the juvenile shall be taken before the juvenile court or delivered to the juvenile officer or person acting for him. Compliance with that statutory requirement protects the juvenile against interrogation before such delivery. *Arbeiter* (1), supra [408 S.W.2d 26]. Thereafter, the juvenile is subject to jurisdiction of the juvenile court and whether he is interrogated by other than juvenile court personnel depends on whether permission is granted for such interrogation by juvenile court personnel. In most juvenile proceedings, this question will not arise. Where it does not, any statement made will be to the juvenile officer or other juvenile court personnel and under § 211.271(3) will not be usable other than in the juvenile court. In more serious crimes, a request by police personnel to interrogate may well be made. When it does, a decision will be made by juvenile authorities, based, no doubt, on the nature and seriousness of the alleged offense, the record and histo-

ry of the juvenile himself, and other pertinent facts and circumstances. If questioning is permitted, the juvenile authorities are in a position, as here, to see that the juvenile's rights are fully explained and protected, that he understands those rights, and that he is aware of the potential consequences of any statement he may make. Use in criminal trials of voluntary statements made under such circumstances will not violate any confidence or undermine or destroy the parens patriae relationship existent when only the juvenile and juvenile court personnel are involved."

■ The idea that an attempt should be made to *rehabilitate* offenders under seventeen years of age, rather than merely *punish* them, is settled public policy, declared by statute and case law in Missouri. "The purpose of the Juvenile Law is not to convict minors of criminal acts, but to safeguard and reform children that may have erred * * *." *State ex rel. Shartel v. Trimble*, 333 Mo. 888, 63 S.W.2d 37, 38 (1933). The idea of rehabilitation was conceived, rightly or wrongly, as a procedure for dealing with juvenile offenders which would be of maximum benefit to society. Section 211.061(1) represents a statutory mandate which *must* be followed when dealing with offenders under seventeen years of age.

■ We do not believe that a misrepresentation as to age, in the circumstances of this case, is sufficient to remove the need for protection and special treatment foreseen and mandated by the General Assembly. The Juvenile Code intends that no statement shall be made to police by a person under seventeen years of age before the child is taken to juvenile authorities. To hold the statement admissible here would permit the State to obtain and use what the Code refuses.

We hold the trial court erred in admitting Officer Tumminello's testimony regarding the confession appellant made to him.

We are unable to conclude on the record before us that it would not be reasonably possible for the State to adduce additional evidence at another trial. Accordingly, the cause should be remanded for new trial rather than reversed outright. *State v. Patton*, 308 S.W.2d 641, 644 (Mo. banc 1958).

The judgment is reversed and the cause remanded.

SEILER, C. J., and MORGAN and BARDGETT, JJ., concur.

FINCH, J., concurs in separate concurring opinion filed.

HENLEY, J., dissents in separate dissenting opinion filed.

HOLMAN, J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of HENLEY, J.

FINCH, Judge (concurring).

I concur in the principal opinion.

The cases relied on by the State, of which *Penn v. Peyton*, 270 F.Supp. 981 (W.D.Va. 1967), is typical, involved instances in which a juvenile willfully misrepresented his age from the time of arrest through his trial and conviction as an adult after which he sought relief on the basis that he was a juvenile and subject to the juvenile code. I have no trouble with those cases. Any different treatment of willful misrepresentation of his age until after trial and conviction would permit an unacceptable abuse of process.

The foregoing cases are not applicable to the situation with which we deal. Not only did the officers learn the correct age of the appellant that very afternoon but, in addition, there is nothing to show that appellant willfully misrepresented his age to the officers. Many of us have observed instances of people who have no purpose to mislead being temporarily confused as to the year of their birth and their exact age. This appellant could have made an honest mistake in stating the date of his birth to the officers. Under such circumstances, I am unable and unwilling to conclude that appellant did something which would result in the admission of his oral statement to the officers in contravention of the rule previously announced by this court in *State v. Arbeiter*, 408 S.W.2d 26 (Mo.1966).

Furthermore, what occurred during that short period on the afternoon appellant was arrested need not have hampered or seriously delayed investigation of the offense by the officers. As soon as the officers learned appellant's correct age, they promptly and properly had him conveyed to the juvenile center, presumably because they knew that the juvenile code as interpreted in *Arbeiter* so required. Presumably, the officers also knew or at least they should have known that under *Arbeiter* they were not permitted to interrogate a juvenile before delivering him to the juvenile authorities. Accordingly, they should have known or had reason to suspect that the oral statement they had just taken from the juvenile was not likely to be admissible in evidence. With that knowledge they could have sought leave from the juvenile authorities to interrogate appellant under proper circumstances as was done in *State v. Wright*, 515 S.W.2d 421 (Mo. banc 1974). Such procedure would have avoided any serious delay or handicap as a result of the mixup in age and would have permitted the officers to pursue and complete their investigation promptly.

I agree with Judge Henley that the courts are confronted with a difficult problem caused by insufficient facilities and personnel to provide the special treatment and rehabilitation contemplated by the juvenile code. An additional factor increasing the problem of the courts arises from the necessity of trying to handle juveniles on the basis of a *parens patriae* relationship while at the same time granting to the juveniles the adversary rights to which they have been held to be entitled. Obviously, it is difficult to be an adversary (such as exists in a criminal proceeding) and at the same time maintain the relationship of a parent. However, such changes as are to

be made, whether in the relationship or in personnel and facilities for handling juveniles, must come by legislative action, not by a change in judicial interpretation of the existing statute. Accordingly, I concur.

HENLEY, Judge (dissenting).

I respectfully dissent. I would hold that a voluntary inculpatory statement made to the police by a child described in § 211.071[1] of the juvenile code is admissible in evidence at his trial for the commission of an offense with which he is charged under the general law.

In 1966, we construed § 211.061 to require the exclusion of an incriminating statement elicited from a fifteen-year-old child by the police while in their custody. *State v. Arbeiter*, 408 S.W.2d 26, 30[3]. That section of the code requires that when a child is taken into custody by the police they deliver him immediately to the juvenile court or juvenile officer; it does not mention evidence or its admissibility.

The court said in *Arbeiter*, supra, referring to and quoting from an Arizona case,[2] that the philosophy of our juvenile code is that in the majority of cases involving criminal offenses by a child " * * * there is both a responsibility and an opportunity for the state, through special treatment in a non-criminal proceeding, to redirect and rehabilitate these young people * * *;" that "[t]his operates for the benefit of the individual, and for society as a whole * * *;" that one of the purposes of § 211.061 was to protect the child from the effects of interrogation by the police which was said to be "adverse" to any rehabilitative efforts by the state; that to enforce this purpose of § 211.061 it was necessary to exclude from the evidence any statement obtained from the child by the police during the period when they were disregarding the command of § 211.061 that the child be delivered immediately to juvenile authorities. The court also recognized in *Arbeiter*,

supra, as does our juvenile code in § 211.-071, that there are persons within the chronological classification of "child" who are not in fact "children," and for whom special treatment under the juvenile code is futile. Among these is the particular individual the juvenile court has determined, after a hearing, is not susceptible of redirection or rehabilitation, "is not a proper subject to be dealt with under the * * * [juvenile code]," and, therefore, may be prosecuted under the general law as an adult. There is no reason for excluding from evidence at his trial under the general law any statement made to police by this person, so long as the statement is voluntary, because he was not a proper subject for rehabilitation efforts by the state in the first place; he is one of those, the juvenile court has determined, for whom special treatment under the juvenile code is, and was at the time he was taken into custody, futile.

There may be some reason for the *Arbeiter* exclusionary rule where a child susceptible of rehabilitation is retained under the jurisdiction of the juvenile court for treatment, but there is none where he is released for prosecution as an adult. As to the theory that a purpose of § 211.061 is to protect the child for rehabilitation, I dare say the "effect" of an interrogation by the police would be no more adverse to the success of rehabilitative efforts by the state than would the child's living with the fact that he had taken the life of another human being. Furthermore, as to the so-called "responsibility and opportunity" of the state to rehabilitate these young people, there has been, so far, little more than lipservice recognition by the state that this is the philosophy of the juvenile code. True, there have been efforts in this direction by many, but the steady yearly increase of violent crime in Missouri committed repetitively by children 12 years of age and older refutes any notion that the state has the trained personnel and the facilities

1. References to sections of the statutes are to RSMo 1969 and V.A.M.S.

2. *State v. Shaw*, 93 Ariz. 40, 378 P.2d 487 (1963).

adequate for the task. We provide little more than "warehousing." Until a sustained intensive effort is made and we have secured sufficient trained personnel and facilities to provide the special treatment referred to, it may not be said that Missouri is truly committed to rehabilitation.

I concurred in the *Arbeiter* decision, but am convinced now that it is not sound and would overrule it and its progeny.

In the instant case, the juvenile court has determined that defendant was not a proper subject to be dealt with under the juvenile code. The circuit court has determined that the statement he gave police was voluntary and admissible in evidence. For the reasons stated, I would hold there was no error in admitting the statement and would affirm the judgment.

HOLMAN, Judge (dissenting).

I respectfully dissent. It is my view that defendant's misrepresentation of his age to the arresting officers would preclude his reliance upon Section 211.061(1), V.A.M.S., and *State v. Arbeiter*, 408 S.W.2d 26 (Mo. 1966) during the period from the time of said misrepresentation until his actual age was discovered by the officers.

I would accordingly affirm the judgment of conviction.

PER CURIAM.

In a motion for modification of the opinion herein or for a rehearing, the State argues that the opinion uses broad language which at least arguably would apply to situations and questions not presented or briefed on this appeal. The opinion should not be so construed. This case presented the issue of whether in the circumstances disclosed by the evidence the statement obtained by the officers by interrogating appellant Wade was admissible. We have held that it was not. We have not ruled or decided issues or situations not here involved. Respondent's motion to modify or for a rehearing is overruled.