Alok Ahuja, Chief Judge
I join Judge Newton’s opinion for the Court.
As Judge Newton’s majority opinion explains, the analysis in the dissenting opinion is fundamentally misguided, because this case involves the interpretation and application of a state statute, not the constitutional principles developed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), and its progeny. And, as the majority opinion discusses, the Missouri Supreme Court has held' in multiple cases that where government officers fail to comply with the procedures specified in the Juvenile Code for treatment of detained juveniles, statements obtained from those juveniles must be excluded from the government’s case in chief. See, e.g., State v. Wade, 531 S.W.2d 726, 729 (Mo. banc 1976); State v. Arbeiter, 408 S.W.2d 26, 29-31 (Mo.1966). Our decision in this case must be guided by Missouri Supreme Court decisions interpreting and applying Missouri’s Juvenile Code, not by decisions of the Supreme Court of the United States interpreting federal constitutional provisions.[1]
*704 I write separately merely to point out that the result would be the same, even if we applied the remedial approach adopted in the Miranda,cases, as the dissent advocates. , ,
The remedial principle applied in the Miranda cases is reasonably straightforward:
• if police officers fail to give Miranda warnings in circumstances where those warnings are required,
• then subsequent statements made by a detainee in response to police interrogation are présuméd ’ to be coerced, and are inadmissible in the prosecution’s case in chief.
The-Supreme Court of the United States has stated this fundamental point time and again. Thus, in Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), the Court stated that Miranda’s “core ruling [was] that unwarned statements may not be used as evidence in the prosecution’s case in chief.” Id. at 443-44,120 S.Ct. 2326. .Similarly, in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 8.4 L.Ed.2d 222 (1985), the Court explained that “[a] Miranda violation ... affords a bright-line, legal presumption of coercion, requiring suppression of all unwarned statements.” Id. at 306, 105 S.Ct. 1285 n.. 1. Even Justice Thomas’ three-justice plurality opinion in United States v. Patane, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), recog--nizes this basic principle: “To protect against'this-danger [of violating an arres-tee’s privilege against self-incrimination], the Miranda rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of -the prosecution’s case in chief.” Id. at. 639,124 S.Ct. 2620.
During oral argument, the Juvenile Officer’s counsel acknowledged that she could not identify any case in which the Supreme Court of the United States had held that a detainee’s statement was admissible in the government’s case in - chief, despite- law enforcement’s failure to give warnings required by Miranda and its progeny.
Unlike the Juvenile Officer, the dissent seeks to deny the simple remedial rule applied -in the Miranda cases, by relying on a hodge-podge of inapposite legal authorities. For example, the dissent cites Fourth Amendment seareh-and-seizure cases (Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011); Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)) to argue that the application of the exclusionary rule is separate and distinct from the question whether a defendant’s rights have been violated. Similarly, the dissent relies on Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).- But in Tucker, “[t]he statements actually made by *705 respondent to the police,” after he was given incomplete Miranda warnings, “were excluded at trial,” id. at 447-48, 94 S.Ct. 2357; the, only question in Tucker was whether statements made by another witness should be excluded, because that witness was identified by police based on the defendant’s unwarned statements. Tucker does not question Miranda’s core holding that the defendant’s unwarned statements themselves are generally inadmissible. ' As a final example, the dissent relies on Sanchez-Llamas v. Oregon, 548 U.S. 331, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006), in which a foreign-national defendant argued that his inculpatory statements should be excluded as evidence in a state criminal trial, because he had not been advised of his right under an international treaty to have consular officials of his home country informed of his detention. But .Sanchez-Llamas emphasizes that the right of consular notification at issue in that case was wholly different from the rights guaranteed a criminal defendant under Miranda: ...
The violation of the right to consular notification ... is at best remotely connected to the gathering of evidence. Article 36 has nothing whatsoever to do ■with searches or interrogations. Indeed, Article 36 does not' guarantee defendants any assistance at all. The pró-vision secures only- a right of foreign ■ nationals to have their consulate informed of their arrest or detention — not to have their.consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. In most circumstances, there is likely to be little* connection between an Article 36 violation and evidence or statements obtained by police. -
Id. at 347, 126 S.Ct. 2669. Sanchez-Llamas has nothing to do with the exclusionary remedy applied where custodial statements result from a Miranda ■ -violation.
■ In New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court of the United States held that police are not required to administer Miranda warnings in certain exigent circumstances involving threats to the public’s safety. Id. at 655,. 104 S.Ct. 2626. Section 211.059.1 contains no similar “public safety” exception, however, and as the majority opinion explains, we cannot — as a matter of Missouri statutory interpretation — write a “public sáfety”' exception into the statute,, when such an exception is not contained in the statute’s unambiguous text. , .
Because-§ 211.059.1 contains no “public safety” exception, officers were required to give J.L.H. the warnings specified in the statute before interrogating him, even assuming that no warnings were required under the Miranda cases. The Juvenile Officer concedes that no such warnings were given. The' majority opinion then determines the consequences of this statutory violation by applying a remédiál analysis similar to that applied in the Miranda cases: if police officers fail to give the statutory warnings in circumstances where those warnings are required, then subsequent statements made by a juvenile detainee in response to police interrogation are presumed to be coerced, and áre inadmissible in the government’s case in’-'chief. Unlike the dissent, I see no analytical inconsistency between the exclusionary remedy applied 'by the majority in this case, and the remedy uniformly applied in the Miranda caselaw.

. The dissent argues that Wade and Arbeiter are distinguishable, because those cases were both criminal prosecutions, not juvenile delinquency proceedings like this case. Section 211.059.1 plainly applies to juvenile proceedings, however, since its warnings must be administered whenever á juvenile is taken into custody "for an offense in violation of the juvenile code or the general law which would place the child under the jurisdiction of the juvenile court pursuant to [§- 211.031,1(2) or (3) ]." Arbeiter does not limit its discussion to adult criminal proceedings; to the contrary, it proclaims that the “philosophy of our Juvenile Code” is that, "at the juvenile level, the problem [of the protection of society from . criminal activity] is best proceeded against on a rehabilitative basis under special procedures for the benefit of the child." 408 S,W.2d at 30 (emphasis added). More generally, the Missouri Supreme. Court has held that the right to counsel and other statutory and constitutional safeguards must be respected in juvenile and other parens patriae proceedings, no less than in criminal proceedings. See, e.g., In *704 re 259 S.W.3d 533, 535 (Mo. banc 2008) (recognizing "the right to counsel as a fundamental right, necessary to ensure fairness in criminal proceedings as well as in juvenile delinquency proceedings”; "Becaúse of the importance of the right to counsel to the fairness of the proceedings, there must be strict and literal compliance with the statutes affecting this right, and failure to strictly comply results in reversible error."); In re N.D.C., 229 S.W.3d 602, 605 (Mo. banc 2007) (holding that the constitutional right to confront adverse witnesses applies in juvenile delinquency proceedings; "the -constitutional protections applicable in criminal proceedings are also applicable in juvenile delinquency, proceedings due to the possibility of a deprivation of liberty equivalent to criminal incarceration”); In re Link, 713 S.W.2d 487, 494 (Mo. banc 1986) (guardianship proceeding; " ‘Where .... the state undertakes to act in parens patriae, it has the inescapable duly to vouchsafe due process ... [and] due process requires that the infirm person ... be fully advised of his rights,and accorded each of them unless knowingly and understandingly waived.’ ” (citation omitted)).