Frank **PATTERSON** et al., Plaintiffs,

v.

Thomas **HOPKINS** et al., Defendants.

Janie Lee **FOX** et al., Plaintiffs,

v.

Thomas **HOPKINS** et al., Defendants.

Nos. DC 71–65–S, DC 71–66–S.

United States District Court,
N. D. Mississippi,
Delta Division.

Sept. 15, 1972.

| If Adjusted Gross Income is | Income Exclusion Per Pupil is | Estimated Net Benefit to Family | | |
|---|---|---|---|---|
| | | One child | Two children | Three or more |
| Less than $9,000 | $1,000 | $50.00 | $100.00 | $150.00 |
| $9,000–10,999 | 850 | 42.50 | 85.00 | 127.50 |
| 11,000–12,999 | 700 | 42.00 | 84.00 | 126.00 |
| 13,000–14,999 | 550 | 38.50 | 77.00 | 115.50 |
| 15,000–16,999 | 400 | 32.00 | 64.00 | 96.00 |
| 17,000–18,999 | 250 | 22.50 | 45.00 | 67.50 |
| 19,000–20,999 | 150 | 15.00 | 30.00 | 45.00 |
| 21,000–22,999 | 125 | 13.75 | 27.50 | 41.25 |
| 23,000–24,999 | 100 | 12.00 | 24.00 | 36.00 |
| 25,000 and over | 0 | 0 | 0 | 0 |

Robert F. Wood, Douglas L. Tynes, Clarksdale, Miss., Joe A. Cannon, Colorado Springs, Colo., Craig E. Miller, National Juvenile Law Center, St. Louis, Mo., for plaintiffs.

Elzy J. Smith of Sullivan, Smith & Hunt, Clarksdale, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was submitted to the court after a hearing on the merits on June 29, 1972, at the United States Courthouse at Clarksdale, Mississippi. The court has received and considreed proposed findings of fact and conclusions of law from the parties and the case is now ripe for decision. The findings of fact and conclusions of law required by Rule 52(a) F.R.Civ.P are incorporated in this Memorandum of Decision.

Earl Stanley Patterson (Patterson), a minor of the age of 17 years and a member of the black race, was arrested on a misdemeanor charge by officers of the City of Clarksdale, Coahoma County, Mississippi, on September 20, 1971 and incarcerated in the Coahoma County jail.[1] On the next day, September 21, 1971, a deputy sheriff of the county filed a petition with the Youth Court of

---

1. The City of Clarksdale does not have a city jail. The city uses the jail facilities of the county, pursuant to a contractual arrangement made between the county and the city by virtue of Miss.Code Ann. § 3374–135 (Supp.1971).

the county, of which defendant, Honorable Greek P. Rice, is the presiding judge, seeking to have Patterson adjudged delinquent and/or neglected within the purview of Mississippi's Youth Court Act.[2] Patterson was incarcerated in the county jail until September 22, 1971, when he was released on bail. Patterson was subsequently adjudicated a delinquent by Judge Rice and was released on supervised probation. On September 23, 1971, Patterson, through his father, Frank Patterson, as next friend, filed the complaint in DC 71–65–S, seeking declaratory and injunctive relief based upon the guarantees of due process and equal protection under the Fourteenth Amendment to the Constitution of the United States and the right to be free from cruel and unusual punishment under the Eighth Amendment. More will be said of this later.

Larry Fox (Fox), a minor of the age of fifteen years and a member of the black race was arrested on a felony charge by officers of the Sheriff's Department of Coahoma County, Mississippi on September 28, 1971 and incarcerated in the county jail. On September 30, 1971 a petition was filed by a deputy sheriff of the county with the Youth Court, above mentioned, seeking to have Fox adjudged delinquent and/or neglected within the purview of the Youth Court Act. Fox was incarcerated in the county jail until September 29, 1971, when he was released into the custody of his mother. Subsequently Fox was adjudicated by Judge Rice as a delinquent under the Youth Court Act, and placed on supervised probation. Thereafter, on or about February 1, 1972, Fox was apprehended by Deputy sheriffs of the county for a violation of the conditions of his probation, and was incarcerated in the jail for a portion of a day before being released by agreement of the parties.

On September 30, 1971 Fox, through his mother as next friend, filed the complaint in DC 71–66–S, seeking relief similar to that sought by Patterson in DC 71–65–S.

The plaintiffs in the two actions are represented by the same group of attorneys. On December 29, 1971, a motion was filed in each action to consolidate the two for trial. The actions involve common questions of law and fact, and the court, on January 10, 1972, entered an order consolidating the actions for trial on any and all matters at issue.

The actions were originally filed against Thomas Hopkins, Sheriff of Coahoma County, Mississippi, Billie White, Chief of Police of the City of Clarksdale, Mississippi,[3] and Honorable Greek P. Rice, Youth Court Judge of Coahoma County, Mississippi. At a later stage in the proceedings the members of the Board of Supervisors of Coahoma County were made additional parties defendant in the actions.

Prior to the final hearing, the court heard and considered evidence on plaintiffs' motion for a preliminary injunction. The motion was denied by an order entered on March 13, 1972. The court has heard the actions on the evidence introduced at the hearing on the motion for a preliminary injunction, as well as that introduced at the hearing on the merits. The court has also considered the stipulations and admissions on file and such other pertinent matters as are of record.

In each action, plaintiff seeks to represent a class of persons similarly situated; that is a class composed of "all juveniles residing within the confines of Coahoma County, Mississippi, the parents of all juveniles residing within the

---

2. Miss.Code Ann. §§ 7185–01 et seq., as amended. The Youth Court Act established a "Youth Court Division" (Section 7185–01) within and as a part of the County Court of each county in the state having a County Court. Coahoma County, of which Clarksdale is the county seat, during all times pertinent to this action, had a County Court.

3. Chief of Police, Billie White, is not a defendant in DC 71–66–S.

confines of Coahoma County, Mississippi and all juveniles who are presently detained or may be detained by the defendants and the parents of such juveniles".

With the exception of the allegations of facts peculiar to the named minor plaintiff in each action, the complaint in each action contains allegations similar, if not identical, to the other. To state the nature of the complaint in one action is to state the nature of the complaint in the other.

The Youth Court Act (Miss.Code Ann. §§ 7185–01 through 7185–30) was originally adopted by the Mississippi Legislature at its 1940 session. Ch. 300, Laws 1940. The Act was extensively amended by the Legislature at its 1966 session. Ch. 377, Laws 1966. The last amendment was adopted at the 1971 Session. Ch. 391, Laws 1971.

Plaintiffs contend that defendant Rice, Judge of the Youth Court, is charged with the duty to provide each delinquent child with the care, guidance and control, preferably in his own home, as will be conducive to the child's welfare and the best interest of the state, and, when such child is removed from the control of his parents, the court's duty is to secure for the child care as nearly as possible equivalent to that which should have been given the child by his parents.

Plaintiffs contend further that Judge Rice does not perform the duties of his office as the law requires, but, on the other hand, with the aid of defendant police officers, he acts in such a manner as to detain delinquent children in violation of their constitutional rights in the county jail in cells which are in close proximity to adult detainees and con-

victs and which are dirty, unsanitary and lacking in essential furnishings and equipment.

Plaintiffs also contend that delinquent children, while incarcerated, are not furnished nutritious food, medical examinations or treatment, soap, towels, books or other reading material, psychological or religious services, educational or recreational opportunities or any other form of rehabilitative treatment or care.

The plaintiffs assert that the incarceration of delinquent children, including themselves, under such conditions, deprives them of due process of law as required by the Fourteenth Amendment, and subjects them to cruel and unusual punishment in violation of the guarantees of the Eighth Amendment. Each plaintiff seeks to recover damages in the sum of $50.00 for the violation of his constitutional rights and appropriate injunctive relief.

At a later stage in the proceedings, plaintiffs were allowed to amend each complaint to allege that prisoners within the jail were separated by race and that such pattern is contrary to the equal protection clause of the Fourteenth Amendment.

The Youth Court has exclusive jurisdiction of all proceedings concerning any delinquent, neglected or battered child residing or being in the county.[4] No child under thirteen years of age may be prosecuted criminally for a misdemeanor or a felony, but such case must be handled by the Youth Court.[5]

When any child thirteen years of age or older is brought before any justice of the peace or municipal court and charged with the commission of a misdemeanor under state law or municipal ordinance, such court must, unless prosecu-

---

4. Miss.Code Ann. § 7185–03 (1971 Cum. Supp.).

Section 7185–02 of the Act defines a "child" as "[a] person who is less than eighteen (18) years of age"; and a "delinquent child" as "[a]ny child not less than ten (10) years of age . . . [possessing characteristics set forth in the act]". The term "delinquent child"

is synonymous with what is commonly called a "juvenile offender". The action sub judice does not pertain to a "neglected child" or "battered child" and the court is not concerned with the rights of such a child in this proceeding.

5. Id. § 7185–17.

tion is permitted by order of the Youth Court, transfer the case to the Youth Court of the county to be dealt with as a case of delinquency. This provision does not, however, apply to traffic violations.[6] The Youth Court has the power, in its discretion, to certify a child of thirteen years or over to a court of proper jurisdiction for prosecution; if the offense invoked would be a felony if committed by an adult.[7] There is one exception. The Circuit Courts of the state have exclusive jurisdiction of a delinquent child if he is charged with a capital offense.[8] Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (Miss.1958).

The plaintiffs do not challenge the constitutionality of the Mississippi Youth Court Act, and the court is not concerned with such an issue in this proceeding.

Plaintiffs contend that defendants did not afford them, and do not afford members of the class which they represent, due process of law while instituting and conducting delinquency proceedings under the Act, and that defendants have subjected plaintiffs and the members of the class which they represent to cruel and unusual punishment which is prohibited by the Eighth Amendment.

The Act provides that upon a finding by the court that a child is neglected or delinquent, it shall be so adjudged and proceed as follows:

(1) Place the child under supervision in his own home or in the care of a relative, under such terms as the court shall determine and direct; or (2) place the child in a suitable family home, or commit him to the custody of a suitable private institution or agency able and willing to receive him; or if adjudged delinquent, may commit the child to the custody of a state-supported training school, provided that no child who is under ten (10) years of age or is not under eighteen (18) years of age shall be committed to a state training school.[9]

The complaints do not encompass questions relative to the handling of delinquent children who are committed to a state training school. The opinion and judgment of the court will not, therefore, relate to or, in any way, adjudicate questions concerning the constitutional rights of delinquent children who have been or in the future may be committed by the Youth Court of Coahoma County to the state's training schools.

The material facts in this case are largely undisputed. The City of Clarksdale and Coahoma County do not provide a place for the temporary or permanent detention of juveniles proceeded against as delinquents with any public or private institution or agency caring for children, nor do they furnish any facility designed or operated for the rehabilitative care and treatment of juveniles. The only quarters available at any time for detention of juveniles are situated within the Coahoma County jail.

Prior to the institution of the actions sub judice, male juveniles were incarcerated in the jail in one or two large dormitory type cells, each containing sixteen bunks, a toilet, shower and lavatory. These cells are located across a ten foot hall from the cells of the adult trusties. Inmates in one cell can talk with inmates in the other across the hall. There is nothing to block the view between the cells.

Female delinquents were placed in a separate cell in another section of the jail building, and were detained on the same floor with adult male prisoners. The same conditions exist with reference to cells in which females are placed as exist with reference to the cells where the male juveniles are kept. The jail is operated with the use of "hall boys", also known and described as "trusties". The hall boys move prison-

6. Id. § 7185–16.

7. Id. § 7185–15.

8. Id.

9. Id. § 7185–09.

ers in the jail, transmit messages from prisoners to jail authorities, and pass meals through the cell doors to prisoners, including juveniles.

The jail authorities do not provide the juveniles with recreational or educational care, nor provide recreational or educational equipment for their use. No social services are provided juveniles. In short, the jail has been used only as a place to detain the juvenile pending disposition of this case.

A juvenile is not given a physical examination upon admittance. Medical attention is furnished only upon request, provided the person in charge of the jail determines that such is necessary.

The same menu is served to juveniles as to adult prisoners, except as hereinafter stated, the jail had not been inspected by a public or private health agency to determine the sanitary condition of the jail, prior to the time of the filing of the complaints. The jail had been inspected and approved by federal authorities as a proper place of confinement for federal prisoners. Since the beginning of the litigation, the jail has been inspected and approved by the proper state health authorities.

In a stipulation filed with the court, defendants agreed that no juvenile would be placed in or committed to the jail unless in the opinion of the Youth Court such juvenile be a child whose habits or conduct are termed such as to constitute a menace to other persons, or it is necessary to insure the attendance of such child at court, except as provided in Miss.Code Ann. §§ 7185–15 and 7185–16.

It is to be noted that Patterson, who was arrested by city police, spent two days in the jail before he was released on bail. He was later adjudged a delinquent by Judge Rice and released on supervised probation. Fox was arrested by county officers on a felony charge and had spent one day in jail when he was released into the custody of his mother. Fox was later adjudged a delinquent by Judge Rice and placed on su-

pervised probation. Judge Rice revoked the probation on February 1, 1972, and Fox spent a portion of that day in jail before he was released by agreement of counsel.

The defendants have filed the following proposals:

1. That the defendants, their agents, employees, and successors in office shall not separate or segregate by race any person held within the Coahoma County jail and shall not provide separate services or facilities except as is required for jail security, discipline and good order.

2. Any officer of law has discretion to release a juvenile charged with a felony or misdemeanor (except those charged with any crime, which upon conviction, is punishable by life imprisonment or death) to his parent or parents, guardian, or custodian, of said child or any other responsible adult who promises the youth will be available for hearing on petition or informal hearing.

3. That no juvenile shall be detained in the Coahoma County jail unless, in the opinion of the Coahoma County Youth Court, such juvenile shall be a child whose habits or conduct are deemed such as to constitute a menace to other persons or it is necessary to insure the attendance of such child at court. In the event the judge of the Youth Court is not available for the determination of such temporary detention, then the determination that the youth shall be temporarily detained in the county jail shall be made only by the sheriff, the chief deputy sheriff, the chief of police, the assistant chief of police, or the juvenile officer of the police department. Should none of the above be available, then the youth cannot be detained. If detained, there must be a due process hearing within 24 hours of such detention before the Youth Court Judge, excluding week-ends, on the sole question of the necessity of detention. Before such hearing, notice must be given to the youth's parents or parent, guardian

or custodian and the attorney for the youth.

4. Children detained in the jail shall be provided with a room or ward separate from and not openly visible to adult prisoners; fresh mattresses; bed linens; tooth brush; tooth paste, soap; medical examination within 24 hours of entrance, excluding weekends; a system of immediate contact with jail authorities; and nutritious meals. A matron shall be available to attend to the needs of female children so held. Provision shall be made for the cleaning and/or issuance of clean clothing for children held. Such facility shall be maintained in a clean and sanitary condition.

5. All hearings concerning juveniles (including detention hearings, hearings to determine whether to certify the youth to a criminal court, or hearings to determine whether probation or parole should or should not be revoked) shall be held after proper notice to the youth, his parents or parent, guardian or custodian and to his attorney of record.

6. No youth shall be declared a delinquent unless the proof of the acts charged in the petition shall be proved beyond a reasonable doubt.

7. That the defendant, Coahoma County Board of Supervisors, if required by the court, will establish juvenile male and female detention wards on the lower floor of the new wing of the Coahoma County jail by converting and modifying the last two cells or wards in substantially the following manner;

a) Remove metal bunks and replace same with three single beds.

b) Panel the inside of these two wards to the ceiling on the two sides where bars are located.

c) Cover the bars of these two wards on the outside next to the hallway with plywood or other suitable covering to the ceiling.

d) Install floor covering or linoleum or similar material of defendant's choice.

e) Remove one of the metal bench and table sets now located in each of the two wards in order to provide recreation room.

f) Provide such additional lighting in each of the two wards as may be necessary.

g) Provide 1-way mirror for the purpose of observing juveniles in the ward.

h) Install room air conditioner in each ward.

i) That defendant shall have reasonable time to provide the above modifications and changes, taking into consideration the necessity of advertising and accepting bids for materials and labor.

At the hearing on June 29, 1972, the court toured the jail and inspected the facility, including the quarters under construction for the use of juveniles, as outlined in the foregoing proposal. The court found the facility to be clean and sanitary and the juvenile quarters to be practically finished according to the terms of the proposal.

It must be kept in mind that the actions sub judice concern only the handling and detention of juveniles, pending the adjudicative hearing, and thereafter while the delinquent juvenile is subject to the jurisdiction of the Youth Court.

■ It is well settled in our jurisprudence that a juvenile is entitled to many of the constitutional rights afforded an adult. Where "critically important" actions determining vitally important statutory rights of the juvenile are concerned, the juvenile is entitled to a hearing upon constitutional principles relating to due process with the assistance of counsel. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); In re Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967). In In re Winship, 397 U.S. 358 at 358, 359 and 368, 90 S.Ct. 1068 at 1069, 1070 and 1075, 25 L.Ed.2d 368 (1970), the Su-

preme Court, speaking through Mr. Justice Brennan, said:

> Constitutional questions decided by this Court concerning the juvenile process have centered on the adjudicatory stage at "which a determination is made as to whether a juvenile is a 'delinquent' as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution." In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed. 2d 527[, 538] (1967). Gault decided that, although the Fourteenth Amendment does not require that the hearing at this stage conform with all the requirements of a criminal trial or even of the usual administrative proceeding, the Due Process Clause does require application during the adjudicatory hearing of " 'the essentials of due process and fair treatment.' " Id., at 30, 87 S.Ct. [1428,] at 1445 [18 L.Ed.2d at 548]. This case presents the single, narrow question whether proof beyond a reasonable doubt is among the "essentials of due process and fair treatment" required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult.

> \* \* \* \* \* \*

> In sum, the constitutional safeguard of proof beyond a reasonable doubt is as much required during the adjudicatory stage of a delinquency proceeding as are those constitutional safeguards applied in Gault—notice of charges, right to counsel, the rights of confrontation and examination, and the privilege against self-incrimination.

■ A study of recent Supreme Court decisions, including McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), where the court held "that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement".[10] leads the court to the inescapable conclusion that, while all of the constitutional guarantees accorded an adult are not required in juvenile proceedings, the applicable due process standard in juvenile proceedings, is "fundamental fairness". *McKeiver, supra* at 543, 91 S.Ct. 1976; In re *Winship, supra* 397 U.S. at 359, 90 S.Ct. 1068. The court, in In re Gault, 387 U.S. at 30, 31, 87 S.Ct. at 1445, in adopting and discussing part of the court's opinion in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), said

> In Kent v. United States, supra, we stated that the Juvenile Court Judge's exercise of the power of the state as parens patriae was not unlimited. We said that "the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness." With respect to the waiver by the Juvenile Court to the adult court of jurisdiction over an offense committed by a youth, we said that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effective assistance of counsel, without a statement of reasons." We announced with respect to such waiver proceedings that while "We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." We reiterate this view, here in connection with a juvenile court adjudication of "delinquency," as a requirement which is part of the Due Process Clause of the Fourteenth Amendment of our Constitution.

■ It is the opinion of the court, after a full consideration of the evidence received and the entire record in the actions sub judice, that the procedure proposed to be taken by defendants, as set forth in the proposal filed by them with the court, measures up to "the essentials

---

10. 403 U.S. at 545, 91 S.Ct. at 1986.

of due process and fair treatment" in the area of responsibility of defendants in carrying out and performing the duties imposed upon them by the Youth Court Act, and by the Eighth, Fifth and Fourteenth Amendments.

Prior to the filing of the complaints herein, the evidence reflects that upon the arrest of a juvenile offender, by either a city patrolman or county law enforcement officer, whether for a misdemeanor or felony, the juvenile offender, with a few exceptions, would be released by the officer to a parent or some other suitable person, pending an adjudicatory hearing before Judge Rice, who was available practically all of the time to conduct hearings of this nature.

The hearings were promptly held after due notice to the child and his parents. Counsel was always made available for the juvenile by the court.

If the hearing resulted in an adjudication of delinquency, the child, in most instances, was released to the custody of his or her mother, father, or some other suitable adult willing to accept responsibility for the child. At times the child would be placed on probation and the terms thereof fixed by the court.

In some instances, where Judge Rice determined, after formal investigation, that the child's habits or conduct were such as to constitute a menace to other persons, or that it was necessary to assure the attendance of such child at Court, the child was incarcerated in the county jail, in lieu of proper bond, until such time as a hearing could be held. If Judge Rice was not available to conduct such an investigation, it was made by the probation officer or some other suitable officer in charge of the case.

There were cases in which a child would be detained in the jail for two, three, or four days, awaiting a delinquency hearing. These instances were the exception rather than the rule. These were also cases where the child would be sentenced to the state training school and incarcerated in the jail for two or three days awaiting transportation.

■ While the ideal situation would be to establish and maintain a fully equipped and properly supervised juvenile detention facility within the county for the detention of juveniles awaiting an adjudicatory hearing, and thus eliminate the necessity of detaining a juvenile in the county jail, the court does not feel that the failure to provide such a facility deprives the juveniles of the county of the "due process and fair treatment" mentioned in *Kent* and its progeny.

The court finds that defendants' proposals provide plaintiffs and the members of the class represented by them with all the essentials of due process and fair treatment guaranteed to them by the Constitution of the United States.

As has been noted the Board of Supervisors has constructed, within the jail, new and adequate quarters for juvenile inmates. These quarters comply, in all respects, with the terms of the proposal, and afford all juveniles incarcerated in the jail with a suitable and proper place of confinement. The board has also proceeded to comply with all terms of the proposal which pertain to the county jail premises and the operation thereof.

The court finds that plaintiffs are entitled to a decree directing the Chief of Police of the City of Clarksdale, the Sheriff of Coahoma County, Mississippi, and the members of the Board of Supervisors of Coahoma County, their successors in office, agents, servants and employees, to faithfully place into effect, perform and carry out the terms of the proposal made and filed by them in this action.

The court does not find that the facts of the case warrant the court in granting any injunctive relief against Judge Rice. The complaints will be dismissed as to him.

An appropriate order will be entered by the court.