11 Kan. App. 2d 13 (1985)
711 P.2d 1336
In the Matter of C.A.D.
No. 57,726
Court of Appeals of Kansas.
Opinion filed December 19, 1985.
Kim D. Steele, of Wichita, for appellant.
Rebecca Pilshaw, assistant district attorney, Clark V. Owens, district attorney, and Robert T. Stephan, attorney general, for appellee.
Before PARKS, P.J., MEYER, J., and DONALD L. ALLEGRUCCI, District Judge, assigned.
MEYER, J.:
In this juvenile offender adjudication under the Kansas Juvenile Offenders Code (K.S.A. 1984 Supp. 38-1601 et seq.), respondent C.A.D. appeals from the court's amendment of its original order of restitution imposed pursuant to K.S.A. 1984 Supp. 38-1663(h).
The facts of this action were stipulated by the parties involved as follows.
On June 15, 1984, a complaint was filed in the Juvenile Department, District Court of Sedgwick County, charging respondent with one count of aggravated kidnapping, a class A felony, contrary to K.S.A. 21-3421. The respondent denied the charge at his initial appearance on July 3, 1984, and the matter was tried before the district court on July 19 and 20, 1984. The *14 court found that the respondent had committed the acts alleged in the complaint, and adjudged respondent a juvenile offender.
The matter was set for dispositional hearing to be held on August 30, 1984. Prior to that hearing, the victim of the offense and her parents filed a claim with the restitution officer of the court, seeking restitution of $534.74, which was the amount of expenses incurred by the victim prior to the dispositional hearing. At the dispositional hearing, the respondent was placed on probation, with one condition of probation being payment of one-half of the restitution, or $267.37. The remainder of the restitution was to be paid by a co-respondent.
On November 21, 1984, the restitution officer of the court filed a motion for review, based on a claim made by the victim and her parents alleging that additional expenses of $651.51 had been incurred since the time of the dispositional hearing. The restitution officer requested that the respondent be ordered to pay one-half of the additional expenses as a condition of probation.
This matter was set for hearing on December 13, 1984. In the meantime, a new complaint was filed, charging the respondent with one count of battery. This matter was set for hearing on December 13 as well. At that hearing, the respondent pleaded no contest to the new complaint. The court then took up the matter of the restitution officer's request for additional restitution.
The respondent objected to any amendment of the amount of restitution originally ordered on the following grounds:
1. The respondent believed that the court was without authority to amend the amount of restitution after a judgment had been entered in the matter;
2. The respondent had not been permitted to examine documents submitted to the restitution officer to verify the claim; and
3. The respondent argued that the amount of restitution which would be required following the proposed amendment would be unduly burdensome, in light of the respondent's age, his earning capacity, his family resources, and his degree of participation in the offense.
The district attorney appeared at the hearing and argued that the court had authority to enter such an order because restitution was a condition of probation over which the court has continuing jurisdiction; that restitution is not a judgment; that the victim's right to privacy outweighed the respondent's need to examine *15 the documents in question; and that the amount of proposed increase was not unduly burdensome.
The court, in response to the respondent's objection concerning documentation, read into the record the amount of each of the bills submitted, as well as the name of the establishment to which each bill was payable. The court, having considered the statements of counsel and having examined the files in the case, then entered an order finding the following:
1. That the respondent was in violation of his probation due to his failure to make timely payments of the restitution originally ordered;
2. That the expenses incurred by the victim had increased to $1,186.25; and
3. That the amount of restitution the respondent should be required to pay should be increased from $267.37 to $593.13.
From the order of the district court, the respondent has filed this appeal.
Respondent first contends that the trial court was acting outside its authority when it amended the amount of restitution originally ordered. Respondent views probation as an "agreement" whereby the court impliedly agrees to continue the probation ordered without modification as long as the original conditions of probation imposed are satisfied.
The State, in contrast, asserts that restitution is a condition of probation and as such may at any time be modified.
This instant action involves a court's authority in a juvenile offender case to increase the amount of restitution ordered at a disposition hearing because of subsequent increased expenses by the victim. Because of the Kansas Legislature's delegation of judicial authority in K.S.A. 1984 Supp. 38-1601 et seq., if a court is to be considered authorized to amend restitution once it is ordered, authority for such action must be found in the statute itself.
K.S.A. 1984 Supp. 38-1666 addresses a court's power to modify an offender's probation:
"If the court finds ... that the juvenile offender violated a condition of probation ... the court may extend or modify the terms of probation...."
As stated, a court is given the power to modify a term of probation if the offender is found to have violated a condition of probation. In the present case, respondent was found by the *16 court to have committed a violation of probation because he failed to make timely payments of the restitution originally ordered. Based upon the language in K.S.A. 1984 Supp. 38-1666, at first blush it appears the court was acting within its authority when it modified the amount of restitution owed by respondent. A condition of probation had been violated, and the court was operating under a statute allowing modification under such circumstances.
We are unable to place full reliance upon K.S.A. 1984 Supp. 38-1666 for the reason that the amendment of restitution in the instant case does not appear to be a modification imposed because of respondent's violation of a condition of his probation, but rather appears to be an amendment imposed solely because the victim's expenses had increased since the time restitution was originally ordered. Authority for this assumption is found in the fact that the victim requested an increase in restitution on November 21, 1984, and it was not until December 13, 1984, that respondent was found to have violated a condition of his probation. Accordingly, we question the applicability of K.S.A. 1984 Supp. 38-1666. That statute provides that a court must first find a violation of a condition of probation and only then may modify the terms of probation. The facts of this case belie the applicability of the statute.
We conclude that a resolution of this issue must be found in K.S.A. 38-1663(h), which provides as follows:
"Whenever a juvenile offender is placed pursuant to subsection (a) or (b), the court, unless it finds compelling circumstances which would render a plan of restitution unworkable, shall order the juvenile offender to make restitution to persons who sustained loss by reason of the offense. The restitution shall be made either by payment of an amount fixed by the court or by working for the persons in order to compensate for the loss. If the court finds compelling circumstances which would render a plan of restitution unworkable, the court may order the juvenile offender to perform charitable or social service for organizations performing services for the community.
"Nothing in this subsection shall be construed to limit a court's authority to order a juvenile offender to make restitution or perform charitable or social service under circumstances other than those specified by this subsection or when placement is made pursuant to subsection (c) or (d)." (Emphasis added.)
This statute mandates that if the court places the offender on probation or in the custody of a parent or other suitable person, the court must order restitution unless it finds compelling circumstances which would make restitution unworkable. No explicit *17 authority for amendment of any order of restitution is present in this statute; likewise, there are no Kansas cases interpreting a court's authority to modify restitution in juvenile offender situations. We note with particular attention, however, the statutory language highlighted above which states: "Nothing in this subsection shall be construed to limit a court's authority to order a juvenile offender to make restitution...." Since "restitution" seeks to restore the status quo (In re Dept. of Energy Stripper Well Exemption Lit., 578 F. Supp. 586, 593 [D. Kan. 1983]), the very nature of the term implies one is to be repaid all expenses for damages suffered. Accordingly, if expenses increased after an initial award was ordered, it seems logical that the wrongdoer would be held responsible. Thus, this language giving the court authority over restitution is interpreted to provide a court with the power and authority to amend awards of restitution.
Respondent contends, however, that "probation" is an "agreement" between the court and the juvenile offender which must not be altered by the court in the absence of a violation of the agreement by the offender. In support, respondent cites Swope v. Musser, 223 Kan. 133, 573 P.2d 587 (1977). Swope involved a defendant, originally placed on probation, who had that probation revoked by the court even though the defendant had not violated any of the conditions of probation. Although the Kansas Supreme Court did analyze the defendant's probation in the context of an agreement between court and defendant, the supreme court's emphasis was on the defendant's due process rights which suffered as a result of an arbitrary revocation of probation. The court's holding was limited to a requirement that a due process hearing be held to determine if conditions of probation had been violated before revocation of that probation could occur. Swope, 223 Kan. at 136.
The instant case is distinguishable from Swope in that, here, there is no arbitrary revocation of probation; rather, there is only an amendment of a condition of that probation. Moreover, in the instant case, the amendment of restitution owing was not an arbitrary action by the court, but was in response to increased expenses incurred by the victim.
In sum, this case asks us to determine the extent of a judge's power relative to restitution in juvenile offender cases. We *18 conclude that the authority to modify restitution once it has been ordered exists and is found in the broad granting clause of K.S.A. 1984 Supp. 38-1663(h), which gives a court authority over matters of restitution.
Respondent next contends that he was denied due process of the law because the trial court refused to allow either respondent or his counsel to examine the bills submitted as evidence for increased expenses incurred by the victim.
At the December 13, 1984, hearing, the victim presented bills representing increased medical expenses and asked for an increase in the amount of restitution the court had ordered respondent to pay. Although the bills, including the amount and name of the establishment to which the sums were owing, were read into the record, neither respondent nor defense counsel was allowed to examine the bills individually. Respondent now claims on appeal that the court's action denied him due process because he was unable to dispute any given amount as unreasonable, to dispute any medical procedure as unrelated to the offense, and to dispute whether any bills were duplicitous or incorrectly figured. Respondent contends the court's action was violative of the right to confrontation and fundamental fairness.
The State, in contrast, contends that our United States Supreme Court has declined to apply the essentials of due process to preadjudicative and dispositional stages of the juvenile process, citing In re Gault, 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428 (1967). The State contends a juvenile offender, during the preadjudicative or dispositional stage, is not entitled to the same due process of the law accorded an adult criminal offender.
An examination of the Kansas Juvenile Offenders Code reveals that our legislature has statutorily provided juvenile offenders with certain substantive and procedural due process rights. K.S.A. 1984 Supp. 38-1663 thus accords the offender with the right to notice, the right to counsel, the right to a speedy trial, the right to subpoena witnesses, the right to testify and to refuse to testify, as well as many other rights enumerated therein. Concerning restitution, the statute authorizing such an action makes no mention of the right to a full hearing on the matter, but instead states only that the court "shall order the juvenile offender to make restitution to persons who sustained loss by reason of the offense." K.S.A. 1984 Supp. 38-1663(h). The fact that the legislature *19 has recognized that juveniles possess certain due process rights, however, does not act as a limitation on other rights to which juveniles may be constitutionally entitled.
The standard for determining what due process requires in a particular juvenile proceeding is "fundamental fairness." McKeiver v. Pennsylvania, 403 U.S. 528, 543, 29 L.Ed.2d 647, 91 S.Ct. 1976 (1971); Bible v. State, 253 Ind. 373, 254 N.E.2d 319 (1970); Patterson v. Hopkins, 350 F. Supp. 676 (N.D. Miss. 1972). It is evident from our Juvenile Offenders Code that the judge in a juvenile offender case is intended to have maximum flexibility in dealing with the juvenile. The Juvenile Offenders Code was conceived so that the juvenile hearing and subsequent disposition would be free from the formalities, procedural complexities, and inflexible aspects of adult criminal proceedings. The juvenile court is to be an institution where corrective and rehabilitative attention is to be given the juvenile. The juvenile is to be subjected to the closest scrutiny and care in order to best help him avoid a life of crime. All this is found in the parens patriae doctrine now expressed in K.S.A. 1984 Supp. 38-1601 as follows:
"K.S.A. 1982 Supp. 38-1601 through 38-1685 shall be known and may be cited as the Kansas juvenile offenders code and shall be liberally construed to the end that each juvenile coming within its provisions shall receive the care, custody, guidance, control and discipline, preferably in the juvenile's own home, as will best serve the juvenile's rehabilitation and the protection of society. In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this code, be deemed or held to import a criminal act on the part of any juvenile; but all proceedings, orders, judgments and decrees shall be deemed to have been taken and done in the exercise of the parental power of the state."
We recognize the above and other attributes of the juvenile justice system. We are aware, however, that broad discretion carries with it the possibility of abuse, and informality carries with it the danger of irregularity. This is why the disposition of juvenile matters should be guided by the succinct rule that "[c]onstitutional rights should not be grudgingly extended." Cook v. State, 231 Ind. 695, 701, 97 N.E.2d 625 (1951). In short, we must be guided by the "fair treatment" under "due process" rule in dealing with juvenile cases. Kent v. United States, 383 U.S. 541, 16 L.Ed.2d 84, 86 S.Ct. 1045 (1966); Summers v. State, 248 Ind. 551, 230 N.E.2d 320 (1967).
*20 The leading decision of the United States Supreme Court to which the State points in support of its argument is In re Gault, 387 U.S. 1. Gault involved a fifteen-year-old boy who had been committed to a state industrial school for the period of his minority because of an obscene phone call he had made. Procedural safeguards were practically nonexistent throughout the juvenile proceedings. Finding that the "unbridled discretion" perpetuated by the parens patriae doctrine was often a poor substitute for procedure, (387 U.S. at 8) the Gault Court held juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment. 387 U.S. at 41.
Although Gault stated "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone" (387 U.S. at 13), it went on to point out that practically all jurisdictions grant certain rights to adults which are withheld from juveniles. The court stated; "We do not mean by this to denigrate the juvenile court process or to suggest that there are not aspects of the juvenile system relating to offenders which are valuable." 387 U.S. at 22. Further:
"While due process requirements will, in some instances, introduce a degree of order and regularity to Juvenile Court proceedings to determine delinquency, and in contested cases will introduce some elements of the adversary system, nothing will require that the conception of the kindly juvenile judge be replaced by its opposite, nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child." 387 U.S. at 27.
It is arguable that, since the Supreme Court has specifically refused to extend its holding, the Court, at least impliedly, has approved of the proposition that a juvenile in the dispositional stage of delinquency proceedings is not entitled to the full due process of the law. Indeed, we note a careful effort on the part of that Court to emphasize that it intended no wholesale incorporation of the rights of adults in criminal trials into the juvenile system.
"We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile `delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process, nor do we direct our attention to the post-adjudicative or dispositional process.... We consider only the problems presented to us by this case." 387 U.S. at 13.
*21 And further,
"`We do not mean ... to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.'" 387 U.S. at 30, quoting Kent v. United States, 383 U.S. at 562.
The Court, just one year before it decided Gault, however, decided Kent v. United States, 383 U.S. 541, wherein Mr. Justice Fortas stated:
"While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties applicable to adults. There is much evidence that some juvenile courts, including that of the District of Columbia, lack the personnel, facilities and techniques to perform adequately as representatives of the State in a parens patriae capacity, at least with respect to children charged with law violation. There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children." (Emphasis supplied.) 383 U.S. at 555-56.
Our reading of Kent and Gault leads us to conclude that the U.S. Supreme Court has left undecided the question of the extent to which a juvenile offender is to be extended due process of the law in post-adjudicative dispositional stages of the juvenile offender process. But, after careful consideration of the case law, our Juvenile Offenders Code, and the guidelines formulated by the Supreme Court, we have reached the conclusion that, applying the concept of fundamental fairness, a juvenile, at a dispositional stage of the offender process, may not be ordered to make restitution to the victim without being given a hearing in which he is apprised of the evidence illustrating the costs incurred by the victim, and without being given an opportunity to defend himself through examination of any and all evidence and the right to examine and cross-examine any and all witnesses. Due process of the law in post-adjudicative dispositional stages of juvenile offender cases necessarily includes the right to a hearing with counsel, confrontation of witnesses, and the right to examine evidence and present evidence in the offender's own behalf.
In sum, this court takes the position that providing a juvenile offender with full due process of the law does not interfere with the administration of the juvenile system, but instead adds *22 appreciable protection to the rights of the juvenile. We believe that the rights to examine evidence, cross-examine witnesses, and confront accusers afford a juvenile the constitutional protection required without diminishing the beneficial elements intended by our Juvenile Offenders Code.
In the instant case the victim's bills were read into the record; however, the offender was denied the right to examine the bills for himself. As stated above, a juvenile offender is entitled, under due process of the law, to examine evidence entered against him as evidence of increased expenses suffered by the victim. The failure of the district court to grant these due process rights was violative of the law and its action relative thereto must be reversed.
The action of the district court is affirmed, except for that part thereof which denied respondent the opportunity to examine evidence offered against him, which is reversed.
Affirmed in part, reversed in part, and remanded with instructions that the trial court afford respondent full due process in determining the validity of the victim's alleged increased expenses.