902 P.2d 1367

In the Matter of The APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JV127231.

1 CA–JV 94–0022.

Court of Appeals of Arizona, Division 1, Department E.

March 23, 1995.

Review Denied Sept. 26, 1995.*

---

1. Chief Judge, Arizona Court of Appeals, Division Two.

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Richard M. Romley, Maricopa County Atty. by Catherine Breeze, Deputy County Atty., Phoenix, for appellee.

Lon S. Taubman, P.C. by Lon S. Taubman and David W. Bell, Phoenix, for appellant.

## OPINION

GARBARINO, Judge.

The juvenile appeals from the court's order transferring him for adult criminal prosecution. He contends that the juvenile court denied his right under the Sixth and Fourteenth Amendments to the United States Constitution to confront and cross-examine the probation officer who authored the trans-

fer report. He further contends that the juvenile court failed to comply with Rule 14(a) of the Arizona Rules of Procedure for the Juvenile Court. Because we believe that due process and fundamental fairness require that the juvenile be afforded an opportunity to question the probation officer regarding the transfer report, we reverse the juvenile court's order of transfer and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The State filed a delinquency petition alleging two counts of attempted second-degree murder, each alleging an alternative count of aggravated assault. In addition, the State requested a transfer hearing.

After hearing, the court found probable cause and then proceeded to the transfer determination. During the transfer phase, counsel for the juvenile requested that he be permitted to cross-examine Tom Alauria, the probation officer who prepared the transfer report and who was present in the courtroom. Counsel stated that he wished to question Mr. Alauria regarding the prototype program at Adobe Mountain School, the services the juvenile received, and the quality of the juvenile's prior referrals. The juvenile court denied the request because Mr. Alauria was not associated with the Arizona Department of Youth Treatment and Rehabilitation, and the court did not believe him to be an appropriate witness to testify regarding that department. In addition, the court concluded that Mr. Alauria's testimony would not supplement the information contained in the transfer report.

After taking the issue of transfer under advisement, the court made a determination that public safety would best be served by transferring the juvenile for prosecution as an adult. The juvenile court specifically adopted Mr. Alauria's analysis of the Rule 14(c) criteria in the transfer report.

## DISCUSSION

### A. Introduction

"A juvenile delinquency proceeding is neither criminal nor penal in nature, and the objective of the juvenile system is the protection and rehabilitation of the child." *State v. Berlat*, 146 Ariz. 505, 508, 707 P.2d 303, 306 (1985). In contrast, the public policy of this state and one of the general purposes of the criminal code is "[t]o impose just and deserved punishment on those whose conduct threatens the public peace." Ariz.Rev.Stat. Ann. (A.R.S.) § 13–101(6) (Supp.1994).

After the juvenile transfer hearing, a determination is made as to whether children will be removed from the protection of the juvenile court and subjected to the harsh reality of the criminal justice system. *See Kent v. United States*, 383 U.S. 541, 553–54, 86 S.Ct. 1045, 1053, 16 L.Ed.2d 84 (1966). In Arizona, the maximum consequence for an adjudication of delinquency in juvenile court is commitment to the Department of Youth Treatment and Rehabilitation until a child's eighteenth birthday. A.R.S. §§ 8–201, 8–241(A)(2)(e) (Supp.1994). If the juvenile court retains jurisdiction, the children may receive counseling and rehabilitative assistance as well as continuing educational and vocational instruction. Conversely, in some cases, prosecution as an adult possibly could result in long-term imprisonment in an adult environment. Further, children transferred to adult court face the remainder of their lives saddled with a criminal record, which by itself is a heavy burden. The United States Supreme Court solemnly expressed in *Kent*, 383 U.S. at 554, 86 S.Ct. at 1053, "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony."

Before we deny children the rehabilitative services and facilities of the juvenile court and force them to face retribution and punishment, we must meet the mandates of due process. The transfer hearing is a "critically important" proceeding, and demands due process and fair treatment. *Kent*, 383 U.S. at 560, 562, 86 S.Ct. at 1056, 1057.

In *Kent*, the juvenile court judge entered an order waiving jurisdiction of the minor without a hearing, without ruling on various motions made by Kent's counsel, without conferring with the minor, his parents, or his counsel, and without findings or reasons for

the waiver. *Id.* at 546, 86 S.Ct. at 1049. Neither the probation report nor the social service file were made available to Kent's counsel. *Id.* at 547, 86 S.Ct. at 1050.

The United States Supreme Court held that juveniles in transfer proceedings are "entitled to a hearing, including access by [their] counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision." *Id.* at 557, 86 S.Ct. at 1055. In an appendix to the opinion, the Court also delineated the factors to be considered in making the waiver determination. *Id.* at 566–67, 86 S.Ct. at 1059–60. The Court noted that if reports include information that is susceptible to challenge, counsel's role is to "denigrate" that information; staff reports do not have an irrebuttable presumption of accuracy attached. *Id.* at 563, 86 S.Ct. at 1058.

■ We agree with the United States Supreme Court that, because the waiver determination is "critically important," counsel should have an opportunity to examine, criticize, and refute whatever material is submitted to the judge. *See id.* Not only should counsel have the opportunity, but counsel must strenuously object to any curtailment of an attempt to do so. We believe that the most effective and efficient means for counsel to refute the contents of the transfer report is to first question the author of the report. Due process and fundamental fairness require that the juvenile be afforded that opportunity.

## B. *Right to Question the Probation Officer*

■ Arizona has formalized the transfer hearing requirement of *Kent* in the Rules of Procedure for the Juvenile Court. The evidentiary hearing requirement of Rule 14(a) is satisfied when the petitioner rests its case on the reports in the court file and any additional testimony the parties may offer. *Romley v. Superior Court,* 163 Ariz. 278, 280, 787 P.2d 1074, 1076 (App.1989). However, the petitioner or any other party may call witnesses to supplement or attack the reports. *Id.*

Although Arizona has not specifically established a right to question the probation officer regarding the transfer report, case law alludes to the existence of such a right. *See Cochise County Juvenile Delinquency Action No. DL88–00037,* 164 Ariz. 417, 793 P.2d 570 (App.1990); *see also Romley,* 163 Ariz. at 280, 787 P.2d at 1076; *Pima County Juvenile Action No. J–47735–1,* 26 Ariz.App. 46, 546 P.2d 23 (1976). Other jurisdictions have recognized the right to question the author of the transfer report. *See In the Matter of J.S.,* 556 P.2d 641 (Okla.Crim.App. 1976), *overruled on other grounds by In the Matter of M.W.N.,* 590 P.2d 692 (Okla.Crim. App.1979); *see also In re Harbert,* 85 Wash.2d 719, 538 P.2d 1212 (1975).

The juvenile in *Cochise County Juvenile Delinquency Action No. DL88–00037* appealed the order of transfer, asserting that the juvenile court erred by permitting the probation officer to testify and by admitting the transfer report. 164 Ariz. at 417, 793 P.2d at 570. This Court held that the report was properly admitted and noted that the minor had an opportunity to question the probation officer as to errors or deficiencies in the report. *Id.* at 419, 793 P.2d at 572.

In *Romley,* the county attorney attempted to have a psychological report, prepared on the juvenile court's own motion, considered in determining the transfer issue. 163 Ariz. at 279, 787 P.2d at 1075. This Court held that transfer and psychological reports need not be introduced in evidence by either party. *Id.* at 281, 787 P.2d at 1077. We noted that the petitioner could rest its case on reports before the court, or either party could present witnesses to supplement or attack the reports. *Id.* at 280, 787 P.2d at 1076.

In *Pima County Juvenile Action No. J–47735–1,* the juvenile argued that the court failed to comply with Rule 14 because a full investigation was not made to determine whether he should be transferred. 26 Ariz. App. at 49, 546 P.2d at 26. This Court noted that both the probation officer's report and testimony were subjected to cross-examination. *Id.*

Furthermore, we find the rulings in other jurisdictions instructive. For example, the

Court of Criminal Appeals of Oklahoma held that social reports are admissible subject to certain safeguards. *In the Matter of J.S.,* 556 P.2d at 643. In that case, the court found that:

> [t]he benevolent intention and the nonadversary role of the author of a social report does not eliminate nor mitigate potential dangers inherent in the preparation of such a report. Thus, the interested parties must be afforded a fair opportunity to examine, criticize and refute the findings in such a report. Only by providing this opportunity at the parties' request, can material susceptible to challenge or impeachment be subjected to the counsel's duty to "denigrate such matter" for there is no irrebuttable presumption of the accuracy of staff reports. *See Kent v. United States,* supra, 383 U.S. at 563, 86 S.Ct. 1045 [at 1058]. Absent specific legislatively enacted safeguards, the fair opportunity to challenge such reports, at the parties' request, is necessary to assure the accuracy of the material which will be utilized as aids in the formulation of the proper disposition of a juvenile.

*Id.* at 643–44; *see also Harbert,* 538 P.2d at 1217 n. 3 (announcing the rule that if counsel "alleges any irregularities in the social report or mentions a need for clarification on any matter mentioned in such report, as a matter of right, counsel may subpoena and cross-examine the party preparing the report, if desired").

■ We find, based upon the cases discussed above, that our courts consistently have permitted a juvenile to question the probation officer at transfer hearings regarding the basis for the transfer recommendation. We follow the rationale of *Kent,* and we adopt the analysis of *In the Matter of J.S.* by the Oklahoma court. We believe that the basis for the transfer report, i.e., the thought process of the probation officer, is "secret," and counsel should be afforded an opportunity to effectively criticize and refute the information within that report. *See Kent,* 383 U.S. at 563, 86 S.Ct. at 1058. Therefore, we find that a juvenile should be permitted to examine the probation officer as to any bias, prejudice, or motivation that may have affected the case analysis and assessment.

The dissent postulates that it would be proper to affirm, concluding that any error was harmless. A review of the verbal exchange between the judge and the juvenile's counsel reflects that counsel was trying to do that which defense attorneys are supposed to do, i.e., examine those who would make recommendations adverse to their clients' interests. *See Kent,* 383 U.S. at 563, 86 S.Ct. at 1058. We, as did the trial judge, can only speculate about the substance of the probation officer's testimony. The trial judge's ruling was premature and an abuse of discretion. Because we know not what the testimony might have been, we cannot, without speculating, say the exclusion of the testimony was harmless.

■ We assume, as the juvenile's counsel may have, that a judge generally will place a great deal of weight on the recommendation of a probation officer who acts as an agent of the court. We believe that all juveniles have a right to question the author of a transfer report that would lead a judge to conclude that there is "no likelihood of reasonable rehabilitation of the juvenile." This is especially true when the recommendation contained in that report may ultimately mean a prison term for a child fifteen years and nine months of age.

The dissent contends the majority erred "by predicating a reversal on the preclusion of unknown evidence." This implies that defense counsel's offer of proof was inadequate or nonexistent. Because a probation officer is an agent of the court, it would be almost impossible for the defense to frame a sufficient offer of proof. However, the subjective recommendation of the probation officer is of such import that it demands examination.

### C. *Sixth Amendment*

The juvenile asserts that the court denied his Sixth Amendment right to confront and cross-examine witnesses because he was not allowed to question Mr. Alauria at the transfer hearing. Because we reverse on other grounds, we need not address the juvenile's Sixth Amendment claim.

### CONCLUSION

The juvenile court erred by refusing the juvenile's request to question the author of the transfer report. Therefore, we reverse

and remand for proceedings consistent with this opinion.

LANKFORD, P.J., concurs.

NOYES, Judge, concurring in part, dissenting in part.

I concur with the majority's conclusion regarding counsel's right to cross-examine the probation officer at a transfer hearing, though I would add that the duties of any trial court include prevention of "undue delay, waste of time, or needless presentation of cumulative evidence." Ariz.R.Evid. 403. In this case, the juvenile court did not rule that counsel had no *right* to call the witness, it ruled that counsel had no good *reason* for doing so. Although such a ruling is not necessarily error, for purposes of brevity I will assume it was error here. I respectfully dissent from the reversal because I find any error harmless.

Rule 103, Arizona Rules of Evidence provides:

> **(a) Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> . . . .
>
> (2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

The majority says that "We, as did the trial judge, can only speculate about the substance of the probation officer's testimony." (at 267, 902 P.2d at 1371) If so, then the majority has erred by predicating a reversal on the preclusion of unknown evidence. But I do not agree that we can only speculate about the officer's testimony; I contend that we know what the testimony would have been because the officer's detailed report is in the record, and counsel expressed no challenge to any information in that report.

Counsel asked to cross-examine the probation officer about the "quality" of the juvenile's prior referrals. The officer's thirteen-page report showed that all prior referrals were for nonviolent offenses ranging from curfew violation to possession of a stolen vehicle. Because counsel did not dispute the accuracy of any information in the report, we can conclude that the officer's testimony would have been consistent with the report, and that no harm to substantial rights was done when the court, in effect, ordered counsel to argue the referrals directly from the report.

Regarding the other two areas of proposed inquiry, counsel expressed no problem with anything in the report, so we can conclude that the officer's testimony about services available to the juvenile, or services previously received by the juvenile, would have been consistent with the report. Again, any trial court error in precluding examination of the officer on these subjects did no harm to substantial rights of the juvenile.

This juvenile had eleven prior referrals to juvenile court and two prior commitments to Adobe Mountain. He was a fugitive from parole when he tried to murder two people in a drive-by shooting. The probation officer, the parole officer, and the psychologist all recommended transfer. The juvenile court articulated numerous findings to explain the transfer order, and overwhelming evidence supports those findings. Because any error was harmless beyond a reasonable doubt, the juvenile court should be affirmed.